TAMMY CLARK, As Administratrix of the Estate of TROY SMITH, Plaintiff v. BURKE COUNTY and RALPH E. JOHNSON, In His Capacity As BURKE COUNTY SHERIFF, Defendants

No. 9425SC98

(Filed 15 November 1994)

**1. Municipal Corporations § 454 (NCI4th)— governmental immunity—failure to plead waiver through insurance procurement—claim dismissed**

Plaintiff's failure to plead waiver of governmental immunity through the purchase of liability insurance subjects her claim against a county for wrongful death occurring during a high-speed chase by a deputy sheriff to dismissal.

CLARK v. BURKE COUNTY

[117 N.C. App. 85 (1994)]

Am Jur 2d, Municipal, County, School, and State Tort Liability § 663.

Liability or indemnity insurance carried by governmental unit as affecting immunity from tort liability. 68 ALR2d 1437.

2. **Sheriffs, Police, and Other Law Enforcement Officers § 35 (NCI4th)— deputy sheriff not county employee—no liability of county**

Any injury resulting from a deputy sheriff's actions during a high-speed pursuit of a vehicle in which plaintiffs' intestate was a passenger could not result in liability for Burke County, since the deputy was an employee of the sheriff, an elected official, and not the county.

Am Jur 2d, Sheriffs, Police, and Constables §§ 6-8, 13, 16, 90-180.

3. **Sheriffs, Police, and Other Law Enforcement Officers § 13 (NCI4th)— action against sheriff—no governmental immunity**

Governmental immunity does not preclude an action against the sheriff and officers sued in their official capacities, since the statutory mandate that the sheriff furnish a bond works to remove the sheriff from the protection of governmental immunity.

Am Jur 2d, Sheriffs, Police, and Constables §§ 90-180.

4. **Sheriffs, Police, and Other Law Enforcement Officers § 21 (NCI4th)— high-speed chase—deputy's actions not willful and wanton—no gross negligence**

In an action to recover for the death of plaintiff's intestate who was a passenger in a vehicle which crashed during a high-speed chase by a sheriff's deputy, the evidence was insufficient to show that the deputy's actions were willful and wanton, rising to the level of gross negligence, where such evidence tended to show that the pursuit occurred just after 4:00 a.m. within the city limits on a two-lane highway; weather conditions were favorable; the highway had one major curve and a couple of hills; the pursuit itself covered only three miles and lasted just a few minutes; the driver never applied his brakes to slow down before entering a

**CLARK v. BURKE COUNTY**

[117 N.C. App. 85 (1994)]

curve; and the deputy never made contact with the vehicle, pulled alongside it, or tried to run it off the road.

**Am Jur 2d, Sheriffs, Police, and Constables §§ 90-180.**

Appeal by plaintiff from order entered 1 October 1993 by Judge Robert E. Gaines in Burke County Superior Court. Heard in the Court of Appeals 4 October 1994.

Plaintiff filed this action in August of 1992 to recover damages for the wrongful death of Troy Smith. In her complaint, plaintiff alleged that Deputy Smith, a member of the Burke County Sheriff's Department, engaged in a high speed pursuit of Vernon Smith's vehicle in which the decedent and Matthew Curry were passengers. Plaintiff further alleged that Deputy Smith forced Vernon Smith's vehicle off the road as it approached a curve leading into a railroad overpass and caused it to crash into a bridge abutment. The crash killed all three occupants. Plaintiff claimed that Deputy Smith's actions were careless, negligent, and grossly negligent. Plaintiff also alleged, among other things, the improper training and supervision of Deputy Smith.

Defendants moved to dismiss plaintiff's complaint. By way of defense, defendants raised Vernon Smith's negligence in operating the vehicle. They also raised the decedent's negligence in entering a vehicle with an intoxicated and negligent driver. In June of 1993, defendants moved for summary judgment. In a supporting affidavit, Deputy Smith relayed his account of the pursuit. In the early morning hours he responded to a call of a disturbance at an arcade. As he neared the arcade, a hysterical female approached him and told him that a man was shooting a gun inside the arcade. Upon arriving at the arcade, another person told him that the gunman had entered his vehicle and was about to flee the scene. Deputy Smith saw the vehicle pull out of the parking lot and, believing that a crime had been committed by one posing a threat to the public, pursued it.

During the pursuit, Deputy Smith remained approximately two car lengths behind and kept his sirens and blue lights activated at all times. After learning that additional officers were en route to assist him in apprehending the vehicle, Deputy Smith continued the pursuit but made no effort to stop the vehicle. He then watched as Vernon Smith's vehicle attempted to round a curve at seventy to seventy-five miles per hour, leave the road, and hit the abutment. At the time of impact, Deputy Smith estimated he was four to five car lengths

behind the vehicle and stated that at no time did he attempt to pass, stop, or force the vehicle off the road.

Defendants submitted additional information in support of their motion. After reviewing all pertinent evidence, the court granted defendants' motion for summary judgment.

From this judgment, plaintiff appeals.

*Harris & Graves, by Joseph A. Mooneyham, and Corry, Cerwin & Luptak, by Todd R. Cerwin, for plaintiff appellant.*

*Womble Carlyle Sandridge & Rice, by Allan R. Gitter and Ellen M. Gregg, for defendant appellees.*

ARNOLD, Chief Judge.

Plaintiff argues on appeal that the trial court erred in granting defendants' motion for summary judgment. In support of this argument, she contends that the action was not barred by governmental immunity and that her failure to plead waiver of immunity did not justify dismissal. She further contends that Deputy Smith's actions were wilful and wanton, rising to the level of gross negligence, and that Sheriff Johnson's failure to properly train Deputy Smith signified a reckless disregard for the rights of the public.

WAIVER OF IMMUNITY

[1]  Plaintiff contends that her failure to plead waiver of immunity through the purchase of liability insurance does not subject her claim to dismissal, and that it is sufficient to present such evidence at trial. She is wrong.

N.C. Gen. Stat. § 153A-435(a) (1991) provides that a county may contract to insure itself and thereby waive its immunity to the extent of the coverage. When suing a county or its officers, agents or employees, the complainant must allege this waiver in order to recover. In *Gunter v. Anders*, this Court upheld the dismissal of plaintiff's action against the Surry County Board of Education after plaintiff failed to allege that the Board had purchased liability insurance and waived its immunity. *Gunter v Anders*, 115 N.C. App. 331, 444 S.E.2d 685 (1994). We held that absent an allegation to the effect that immunity has been waived, the complaint fails to state a cause of action. *Id.* Plaintiff's complaint does not satisfy these pleading requirements and the trial court properly granted summary judgment for Burke County. Plaintiff also argues that the absence of the allega-

tions of waiver is not fatal as long as evidence of waiver is present in the record. This Court addressed and rejected this argument in *Gunter. Id.*

## GOVERNMENTAL IMMUNITY

**[2]** Plaintiff next contends that Burke County is liable, as their employer, for Deputy Smith and Sheriff Johnson's actions. Defendants contend that Burke County cannot be held for alleged negligent acts of Sheriff Johnson and Deputy Smith because the sheriff, as an elected official, is not a Burke County employee.

In *Peele v. Provident Mutual Life Insurance Company*, plaintiff, a dispatcher with the Watauga County Sheriff's Department, filed a wrongful termination suit against Watauga County after the sheriff fired her. *Peele v. Provident Mut. Life Ins. Co.*, 90 N.C. App. 447, 368 S.E.2d 892, *appeal dismissed and disc. review denied*, 323 N.C. 366, 373 S.E.2d 547 (1988). Plaintiff, who had been hired by the sheriff, argued that she was a Watauga County employee and should be afforded the protections available to other county employees. This Court stated that "[i]t is clear . . . that plaintiff was an employee of the sheriff and not Watauga County and its Board of Commissioners." *Id.* at 449, 368 S.E.2d at 894. Citing N.C. Gen. Stat. § 153A-103(a), we stated that "the control of employees hired by the sheriff is vested exclusively in the sheriff . . . [and] the individual person is an employee of the sheriff. . . ." *Id.* at 450, 368 S.E.2d at 894. A deputy is an employee of the sheriff, not the county. *Id.* Therefore, any injury resulting from Deputy Smith's actions in this case cannot result in liability for Burke County and summary judgment is therefore affirmed for Burke County.

**[3]** The next question is whether summary judgment was properly entered for Sheriff Johnson who has been sued in his official capacity as Burke County Sheriff. As this Court stated in *Messick v. Catawba County*, "[g]overnmental immunity . . . does not preclude an action against the sheriff and the officers sued in their official capacities. . . . The statutory mandate that the sheriff furnish a bond works to remove the sheriff from the protective embrace of governmental immunity. . . ." *Messick v. Catawba County*, 110 N.C. App. 707, 715, 431 S.E.2d 489, 494, *disc. review denied*, 334 NC. 621, 435 S.E.2d 336 (1993). In actions against the sheriff, the plaintiff must ordinarily join the surety as a party to the action. *Id.* In *Messick*, however, this Court stated that plaintiff's failure to name the surety as a party is not fatal, but is easily corrected by an amendment to the pleadings. *Id.* In this

case, plaintiff failed to join the surety as a party. Under this Court's decision in *Messick* this omission does not appear to be fatal and can be corrected by an amendment to the pleadings.

## STANDARD OF PROOF

[4] In her next argument, plaintiff contends that Deputy Smith's actions were wilful and wanton, rising to the level of gross negligence. She further contends that Sheriff Johnson is responsible for Deputy Smith's actions and that Sheriff Johnson failed to adequately train or supervise Deputy Smith.

In *Bullins v. Schmidt*, our Supreme Court set forth the standard of care to be applied where an injury occurring during a high speed chase does not result from a collision with the officer's vehicle. *Bullins v. Schmidt*, 322 N.C. 580, 369 S.E.2d 601 (1988). The Court held that liability will not attach unless the officer is grossly negligent, which the Court defined as "wanton conduct done with conscious or reckless disregard for the rights and safety of others." *Id.* at 583, 369 S.E.2d at 603. In *Bullins*, the Court held that the officer's conduct did not rise to the level of gross negligence and found it significant that "[t]he pursuit was in the early morning hours along a predominantly rural section of U.S. 220 where traffic was light and the road was dry. The officers continuously used their emergency lights and sirens, kept their vehicles under proper control, and did not collide with any person, vehicle, or object." *Id.* at 584-585, 369 S.E.2d at 604.

In his deposition, Deputy Smith stated that the pursuit occurred just after 4:00 a.m. within the city limits on a two lane highway. Weather conditions were favorable. He stated that the highway, which has a forty-five mile per hour speed limit, has only one major curve and a couple of hills. The pursuit itself covered only three miles and lasted just a few minutes. Deputy Smith stated that Vernon Smith never applied his brakes to slow down and entered the curve at roughly seventy-five miles per hour. As he neared the curve, Deputy Smith slowed slightly and crossed over the center line in an attempt to straighten out the curve. Commenting on the pursuit, Deputy Smith stated that he did not think Vernon Smith's vehicle would stop, nor did he contemplate terminating the pursuit. Lastly, he added that he never made contact with the vehicle, nor did he pull alongside it, try to run it off the road, or pass it.

Gary Long witnessed a brief portion of the pursuit as he walked home after working the night shift at Hanes. Long saw Vernon Smith's

CLARK v. BURKE COUNTY

[117 N.C. App. 85 (1994)]

vehicle speed by at approximately seventy to eighty miles per hour followed by the deputy's cruiser at four to five car lengths behind. Long observed the pursuit for only five seconds and, when he last saw the vehicles, noticed that the deputy had narrowed the gap between the vehicles to two car lengths. Just after the vehicles left his view, Long heard the accident.

Randall McCauley, plaintiff's expert in police procedures, testified that in his opinion Deputy Smith's pursuit and failure to terminate pursuit violated generally accepted standards for police pursuits. In explaining his opinion, McCauley stated that upon arriving at the arcade Deputy Smith should have taken a few seconds to ascertain (1) if anyone was hurt, and (2) the identity of the gunman. He agreed, however, that even without this information the initiation of pursuit would not have been improper, though perhaps unnecessary. McCauley believed that Deputy Smith conducted a forced pursuit based on the speed of the vehicles and the distance between them. In addition, he believed that the vehicle passing in a no passing zone and entering the final curve at a high rate of speed amounted to evidence of reckless driving. At that point, Deputy Smith should have terminated the pursuit and relied on vehicle information to attempt an arrest at the driver's home.

McCauley also criticized the department's policy on high speed chases stating that, although it instructed officers to conduct a weighing of the risks versus the seriousness of the crime, it failed to supply the guidance necessary to make the assessment. Such guidance should come in the form of factors like location of the pursuit and traffic, road, and car conditions, all of which provide a mental checklist a deputy should run through in conducting an assessment. Finally, McCauley saw an apparent lack of involvement by Deputy Smith's lieutenant, whom he believed should have told Deputy Smith to terminate the pursuit based on available information.

It seems incredulous to suggest that such evidence might show negligence on Deputy Smith's part, and it certainly does not rise to the level of gross negligence. Moreover, there is no evidence of gross negligence as to Deputy Smith's training and supervision and, given the brevity of the pursuit, it is difficult to appreciate criticism of Smith's lieutenant for not ordering him to stop pursuit. It is not evidence of gross negligence, and indeed many of the allegations against Sheriff Johnson suffer from a lack of support. For example, there is no evidence to support plaintiff's claims that Sheriff Johnson (1) knew

Deputy Smith would drive the cruiser improperly and thus failed to supervise him adequately, (2) entrusted the cruiser to Deputy Smith knowing he was not qualified to drive it in a safe manner during a high speed pursuit, (3) allowed Deputy Smith to drive the cruiser in a high speed pursuit knowing he could easily become outraged and harm others, or (4) failed to enforce high speed pursuit procedures. Unsupported allegations in a complaint do not work to create a genuine issue of material fact. *See Messick*, 110 N.C. App. 707, 431 S.E.2d 489.

The facts here present a deep and tragic loss. Three young lives were lost in an effort to outrun the sheriff. But there is no evidence presented that might show gross negligence on the part of anyone in the sheriff's office.

Affirmed.

Judges COZORT and LEWIS concur.