**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOHN SCOTT WORRELL,
Plaintiff-Appellant,

and

LINDA RUTH PARKER,
Plaintiff,

v.

ROGER MORRIS BEDSOLE, in his

No. 95-2816

official capacity as Sheriff of
Cumberland County and
individually; CUMBERLAND COUNTY,
NORTH CAROLINA,
Defendants-Appellees.

SOUTHERN STATES POLICE
BENEVOLENT ASSOCIATION,
Amicus Curiae.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, Chief District Judge.
(CA-94-778-5-F)

Argued: September 24, 1996

Decided: April 3, 1997

Before MURNAGHAN, Circuit Judge, BUTZNER,
Senior Circuit Judge, and HALLANAN,
Senior United States District Judge for the
Southern District of West Virginia, sitting by designation.

_____

Affirmed in part, reversed in part, and remanded by unpublished opinion. Senior Judge Butzner wrote the opinion, in which Judge Murnaghan and Senior Judge Hallanan joined.

_____

**COUNSEL**

**ARGUED:** Joseph Michael McGuinness, MCGUINNESS & PAR-LAGRECO, Elizabethtown, North Carolina, for Appellant. Bobby Grey Deaver, Fayetteville, North Carolina; Douglas Edward Canders, Staff Attorney, CUMBERLAND COUNTY ATTORNEY'S OFFICE, Fayetteville, North Carolina, for Appellees. **ON BRIEF:** Ronald D. McSwain, BOOSE & MCSWAIN, Fayetteville, North Carolina, for Appellant. Gregory K. Kornegay, Wilmington, North Carolina, for Amicus Curiae.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

BUTZNER, Senior Circuit Judge:

John Scott Worrell appeals the order of the district court granting summary judgment to Sheriff Morris Bedsole, who is sued individually and in his official capacity, and to Cumberland County, North Carolina. Worrell brought this action under 42 U.S.C. § 1983 and five sections of Article 1 of the North Carolina Constitution claiming that Bedsole unlawfully discharged him for exercising his free speech rights as a public employee. The district court found that Worrell failed to offer sufficient evidence showing that his speech was a substantial or motivating factor for his discharge. We affirm the order granting summary judgment to Cumberland County. We reverse the order granting summary judgment for Bedsole with respect to Worrell's claim because there are genuine issues of material fact in dispute. Consequently, we reinstate Worrell's state law claims.

2

I

On October 1, 1991, Bedsole fired Worrell from the Sheriff's Department of Cumberland County, North Carolina, where he had been employed for over 18 years. Prior to his termination, Worrell served as a Lieutenant in the Special Operations Unit (SOU), a division created to combat narcotics and prostitution in Cumberland County. During September and October of 1991, Worrell complained to Sheriff Morris Bedsole and Captain Art Binder about manpower and equipment shortages in the SOU. Specifically, Worrell felt that the defective police radios, unreliable police cars, and personnel and equipment shortages were threatening the safety of those working underneath him. Worrell expressed these concerns to Bedsole and Binder on several occasions prior to his termination. Bedsole acknowledged the shortcomings in his department but stated that "in my budget, you do with what you get." Bedsole's budget was controlled by the county commissioners, and he had been unsuccessful in acquiring extra funds to pay for new equipment and additional personnel.

On the morning of October 8, 1991, Worrell met with Bedsole, Binder, and senior administrative officials to discuss complaints that had been lodged against him as supervisor of the SOU. Members of the SOU had complained to Binder and Bedsole that Worrell slept on the job, was often unavailable to assist members of his unit, and that his subordinates had begun to lose respect for him as a supervisor. After reviewing these complaints with Worrell, Bedsole demoted him to a sergeant position in the Patrol Division. Worrell left the meeting and told Bedsole that "he would be getting a letter." Bedsole testified that although upset, Worrell's tone was not threatening or abusive towards him or any of the other senior officers at the meeting, and his behavior was not inappropriate.

The next day, Worrell stayed home on sick leave and called Sergeant Tony Hart, a member of the SOU, to express his frustration with Bedsole's decision to demote him. According to Binder, Worrell told Hart to "tell that pig-faced, chicken cooking, motherf----- to come out there and fire him and bring that n----- Bowser and that bastard Binder with him." Hart relayed this message to Binder, who ordered Hart to repeat it to Bedsole. Bedsole discussed the matter

3

with Senior Advisor Richard Washburn and instructed Washburn to fire Worrell for insubordination. Worrell denies ever making this derogatory statement to Hart.

Washburn visited Worrell at his home the next day, October 9, 1991, and orally terminated him. Worrell alleges that Washburn warned him that if he spoke out against the sheriff or the department, they would take it out on his fiance, Ruth Parker, who was also employed by Bedsole. When Worrell relayed the message to Parker, she resigned from her job. Worrell also alleges that Washburn told him to stay away from J. W. Jones, a former employee who was challenging the sheriff's decision to fire him. Washburn has not denied making these statements. The next day, Bedsole sent Worrell a termination letter which informed Worrell that he had been fired for "insubordination" and "unprofessional and disruptive conduct."

Worrell and Parker sued Bedsole and Cumberland County for retaliatory discharge based on several related federal and state constitutional claims. The pivotal portion of Worrell's complaint alleged that he was fired for exercising his right to free speech with respect to deficiencies in equipment and personnel in violation of the First Amendment.

The district court granted summary judgment for Bedsole on all federal claims, finding that Worrell offered no evidence that his complaints about the manpower and equipment shortages were a "substantial and motivating" factor for his termination. The district court also dismissed the claims against Cumberland County "due to the peculiarities of North Carolina law regarding a Sheriff's independence from the County Commissioners." He dismissed Parker's claims on the basis of her deposition that disclosed no evidence that Bedsole had retaliated against her. Exercising its discretion, the district court dismissed the state law claims without prejudice. Parker did not appeal the district court's adverse order.

The issues before us on appeal include whether Worrell's speech was constitutionally protected and whether there exists a genuine issue of material fact about why Worrell was fired. Worrell claims that he was fired for speaking out to the sheriff about faulty equipment and personnel shortages within the department. Bedsole claims

4

that the sole reason he fired Worrell was for making the crude, insubordinate remark to Hart. Worrell denies making the remark.

We review summary judgment orders de novo, drawing all inferences in favor of the nonmoving party. United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992). Summary judgment is appropriate when there exists no genuine issue of material fact and judgment may be decided as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). To prevail on his First Amendment claim, Worrell must show (1) that his speech was constitutionally protected and (2) that the speech was a "substantial" or "motivating" factor for his firing. Hughes v. Bedsole, 48 F.3d 1376, 1385 (4th Cir. 1995).

II

To determine whether Worrell's speech was constitutionally protected, we balance Worrell's right to comment on matters of "public concern" against the interest of the government agency in effectively and efficiently administering its duties to the public. Pickering v. Board of Education, 391 U.S. 563, 568 (1968). Speech involves matters of public concern when it affects the social, political, or general well-being of a community. Connick v. Myers, 461 U.S. 138, 146 (1983). The answer to the public concern inquiry rests on "whether the `public' or the `community' is likely to be truly concerned with or interested in the particular expression, or whether it is more properly viewed as essentially a `private' matter between employer and employee." Berger v. Battaglia, 779 F.2d 992, 999 (4th Cir. 1985). To perform this inquiry, Connick instructs courts to examine the content, context, and form of the employee's speech in light of the entire record. 461 U.S. at 147-48.

The content of Worrell's speech reflected a concern for the safe and effective operation of the police force--a matter of genuine public concern. Campbell v. Towse, 99 F.3d 820, 828 (7th Cir. 1996); Zorzi v. City of Putnam, 30 F.3d 885, 896-97 (7th Cir. 1996). As we recently noted in Cromer v. Brown, 88 F.3d 1315, 1330 (4th Cir. 1996), "[f]or a police force to be effective it must have the respect and support of its community as well as its officers . . . ." When a supervising officer such as Worrell voices concerns about departmental

5

deficiencies which affect the department's ability to serve and protect the community, that speech bears heavily on the public interest. Campbell, 99 F.3d at 828.

On numerous occasions, Worrell expressed concerns to Bedsole and Binder about deteriorating equipment in the SOU. He complained that the malfunctioning police radios and police vehicles posed a serious threat to the safety of the men in his unit. The police cars often would not crank while officers were on surveillance, and frequent vehicle breakdowns forced the officers to "team up" on road patrol. The old radios would often "fade out," impeding officers who depended on them during undercover investigations.

Worrell also spoke out about manpower and office equipment shortages. He made repeated requests for additional personnel because he felt that Bedsole was using employees to perform political, rather than law-enforcement functions. He also noted how officers brought their own typewriters to work because the outdated manual typewriters in the office made it difficult for officers to keep up with their required paperwork. Deficiencies in departmental resources, from equipment to training and personnel, ultimately affect the level of service provided to the public, and are therefore matters of public concern. Campbell, 99 F.3d at 828 (allocation of police departmental resources involve questions of serious public import).

In considering the context of the speech, the fact that Worrell chose to voice his concerns within the department does not strip his speech of constitutional protection. Matters of public concern that are spoken in private discussions with an employer receive the same constitutional protections as public speech. Givhan v. Western Line Consol. School Dist., 439 U.S. 410, 413-16 (1979). Worrell addressed his superiors in private on behalf of the SOU concerning its inability to operate efficiently. There is no evidence that Worrell spoke out as a means of promoting his own self-interest within the department. Cf. Piver v. Pender County Board of Education, 835 F.2d 1076, 1080 (4th Cir. 1987).

Worrell's interest in voicing his concerns was not outweighed by the interest of the sheriff's department in "promoting efficiency and integrity in the discharge of its official duties." Police agencies, as

6

paramilitary organizations, have a heightened need to maintain discipline and uniformity within their ranks. Jurgensen v. Fairfax County, Va., 745 F.2d 868, 880 (4th Cir. 1984). However, there is no evidence that Worrell's speech caused any disruption within the day-to-day operations of the sheriff's department. Nor is there anything in the record which suggests that the speech caused Bedsole to lose confidence in Worrell's loyalty to the department. In fact, Bedsole does not contend that Worrell's speech caused him to discharge Worrell on the ground that he caused disruption in the operation of the sheriff's department.

Worrell must also provide evidence that the protected speech was a "substantial" or "motivating" factor for his firing. Mt. Healthy City Board of Ed. v. Doyle, 429 U.S. 274, 287 (1977). Bedsole may defeat the claim if he can show by a preponderance of the evidence that he would have discharged Worrell even in the absence of the protected conduct. Id.

Worrell claims that Bedsole fired him solely for speaking out about resource deficiencies within the department. Worrell voiced his concerns to Binder and Bedsole several times leading up to his termination, the last time occurring approximately one week before he was discharged. Though Binder and Bedsole did not disagree with his concerns, Worrell claims that they began to react coldly towards him as he intensified his requests for better resources.

When Washburn orally terminated Worrell, he admonished him not to speak out against the sheriff "if he knew what was good for him" and not to hang around J. W. Jones. Jones was a former employee who was then embroiled in a retaliatory discharge suit against Bedsole. Neither Bedsole nor Washburn denies that these threats were conveyed to Worrell.

On this record prepared for summary judgment, we think Bedsole has not carried his burden of showing that he would have fired Worrell even if he had not engaged in the protected speech. Bedsole asserts that he fired Worrell for making a disparaging remark about him to Tony Hart. He submits that "but for" the insubordinate remark, he would not have fired Worrell. As evidence that the remark was his sole motivation for firing Worrell, Bedsole points to the fact that he

7

fired Worrell immediately after learning about the crude remark. He also notes that the termination letter informed Worrell that he was fired for "insubordination," though the letter does not specify the actual insubordinate conduct. Moreover, Bedsole claims that Worrell attempted to resign after learning of his demotion and that the insubordinate remark simply sealed his fate.

The insubordinate statement that Worrell allegedly made to Hart is, by itself, a legitimate basis for firing a public employee. But there is a genuine dispute whether Worrell actually made the remark. Hart claims he did; Worrell says he did not. There is no evidence that anyone other than Hart heard Worrell at the time they conversed. Resolution of this conflict turns on assessment of credibility. When viewed in the light most favorable to Worrell, the evidence and reasonable inferences are sufficient for a reasonable jury to conclude that Worrell's protected speech was a "substantial" or a "motivating" factor for his discharge.

Since there remain genuine issues of material fact with respect to Bedsole's motive for terminating Worrell, summary judgment is inappropriate. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).

This case is distinguishable from Hughes v. Bedsole, 48 F.3d 1376, 1387-88 (4th Cir. 1995), on which Bedsole relies. In Hughes, the plaintiff, a shift supervisor at the Cumberland County jail, alleged that Bedsole fired her for speaking out about understaffing at the jail and improper training of jail employees. Bedsole claimed that he fired Hughes for leaving jail doors unlocked on two separate occasions. Hughes acknowledged that she left the doors unlocked one time. This court affirmed summary judgment for Bedsole on the nonpretexual ground that Hughes was fired because of her breach of security. Consequently, there was no proof that Hughes' speech was a substantial or motivating factor for her firing. Id. at 1387-88. The disputed factual issues at the heart of Worrell's claim were simply not present in Hughes.

III

Worrell also claims that Bedsole deprived him of his Fourteenth Amendment procedural rights. He asserts that Waters v. Churchill,

8

511 U.S. 661 (1994), required Bedsole to conduct a reasonable investigation to determine whether Worrell actually made the insubordinate statement before he discharged him.

Strictly speaking, the Court's holding in Waters is inapplicable to this case. Waters dealt with the question whether an employee's speech was protected. The Court held that if an employer is confronted with plausible, conflicting versions of the speech, the employer should conduct a reasonable investigation to determine what the employer reasonably believed an employee said.

The nature and content of Worrell's speech about the deficiencies in the department's equipment and personnel are undisputed, unlike the situation in Waters. But Hart's report is disputed. Waters, nevertheless, offers instruction about resolution of the dispute about Bedsole's motive for firing Worrell. The initial question for the trier of fact is what Bedsole reasonably thought Worrell said to Hart, not what Worrell actually said, taking into consideration all of the facts and circumstances Bedsole knew about Hart and about Worrell. See Waters, 511 U.S. at 669 and 680-82. If Bedsole's belief was reasonable there was no need for him to conduct an investigation. See Waters, 511 U.S. at 680. But Bedsole was under a duty to make a reasonable investigation before acting if the trier of fact finds that Bedsole's belief could not be based on simply what he knew about Hart and Worrell. See Waters, 511 U.S. at 681. This analysis will assist the trier of fact in determining Bedsole's motive in firing Worrell-- whether it was because of his belief in Hart's report or Worrell's protected speech. See Waters, 511 U.S. at 682. These procedures give adequate weight to Bedsole's right to conduct his department efficiently and without insubordinate disruption while at the same time protecting the rights afforded to Worrell by the First and Fourteenth Amendments.

IV

The district court properly dismissed Cumberland County as a party. A county may only be held liable for acts for which the county has "final policymaking authority." See City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988). Whether a county or county

9

official has final policymaking authority in a specific area is a question of state law. Id.

In North Carolina, the Office of Sheriff is a legal entity separate and distinct from the Board of County Commissioners because a sheriff is elected by the people, not employed by the county. N.C. Gen. Stat. § 162-1. The sheriff, not the county, has final policymaking authority over the personnel decisions in his office. Clark v. Burke County, 117 N.C. App. 85, 89, 450 S.E.2d 747, 749 (1994). N.C. Gen. Stat. § 153A-103 provides that each elected sheriff "has the exclusive right to hire, discharge, and supervise the employees in his office." This authority may not be delegated to another person or entity. N.C. Gen. Stat. § 162-24. We agree with the district court's conclusion that "Bedsole's final policy-making authority over his personnel decisions in the Sheriff's Department is his alone and is not attributable to Cumberland County."

Worrell relies on cases in which the acts of a sheriff were imputed to the county. E.g., Dotson v. Chester , 937 F.2d 920, 926-932 (4th Cir. 1991); Flood v. Hardy, 868 F. Supp. 809, 812-813 (E.D.N.C. 1994). Dotson applied Maryland law to require the county to pay attorney fees assessed against the sheriff. Dotson is not controlling authority for this case, which necessarily must examine North Carolina law. Flood in turn relies on Dotson . Flood appears to be contrary to Clark, 117 N.C. App. at 89, 450 S.E.2d at 749, and Peele v. Provident Mut. Life Ins. Co., 90 N.C. App. 447, 449-50, 368 S.E.2d 892, 894 (1988), both of which held that because North Carolina grants a sheriff exclusive authority over personnel matters in his office, an employee of his office is not an employee of the county and cannot maintain a suit against the county. Moreover, N.C. Gen. Stat. § 162-8 requires a sheriff to furnish a bond payable to the state of North Carolina. A person injured by the "neglect, misconduct, or misbehavior" of the sheriff may bring a cause of action against both the sheriff and the surety. N.C. Gen. Stat. § 58-76-5. Williams v. Adams, 288 N.C. 501, 503, 219 S.E.2d 198, 200 (1975). County liability is not contemplated by this statute.

V

After the district court granted summary judgment to Bedsole, it declined to exercise supplemental jurisdiction over Worrell's state

10

law claims. Because we are reinstating Worrell's federal claims, we reinstate his state law claims. We affirm the grant of summary judgment to Cumberland County. We reverse the summary judgment granted to Bedsole on Worrell's claims. The case is remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED
IN PART; AND REMANDED

11