Robert WILCOXSON, Plaintiff,

v.

BUNCOMBE COUNTY, Bobby Medford in his individual and official capacities, Sam Constance in his individual capacity, George Sprinkle in his individual capacity, Michael Murphy in his individual capacity, John

Elkins in his individual capacity, Unknown John Doe Investigators in their individual capacities, and Unknown Richard Roe Supervisors and Policymakers in their individual and official capacities, Defendants.

CIVIL CASE NO. 1:13–CV–224–MR–DSC

United States District Court,
W.D. North Carolina,
Asheville Division.

Signed August 20, 2014

David S. Rudolf, Rudolf, Widenhouse & Fialko, Charlotte, NC, for Plaintiff.

Christopher James Campbell, John T. Jeffries Janiere E. Taylor, McAngus, Goudelock & Courie, Patrick Houghton Flanagan, Cranfill, Sumner & Hartzog, L.L.P., Sean F. Perrin, Womble, Carlyle, Sandridge & Rice, Charlotte, NC, Joseph Pinckney McGuire, Ervin Lincoln Ball, Jr., Ball, Barden & Bell, P.A., Joseph Pinckney McGuire, McGuire, Wood & Bissette, P. A., Curtis William Euler, Asheville, NC, Amy L. Rich, Thomas Joseph Doughton, Doughton & Rich PLLC, Winston-Salem, NC, for Defendants.

## MEMORANDUM AND OPINION

Martin Reidinger, United States District Judge

**THIS MATTER** is before the Court on the Defendant Buncombe County's Motion to Dismiss [Doc. 16] and the Plaintiff's Objections [Doc. 30] to the Magistrate Judge's Memorandum and Recommendation [Doc. 29] recommending the Court grant said motion. For the reasons that follow, the Court will accept the Plaintiff's Objections, reject the Magistrate Judge's Memorandum and Recommendation, and deny Defendant Buncombe County's Motion to Dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff commenced this action on August 9, 2013. [Doc. 1]. Plaintiff spent nearly eleven years in state prison for the murder of an Asheville man based upon a

conviction and sentence for which he was later exonerated. *[Id.* at 1]. Plaintiff was unanimously determined to be innocent of this murder by a three-judge panel of the North Carolina Innocence Inquiry Commission in 2011. *[Id.* at 1–2]. Plaintiff claims in this matter that his wrongful imprisonment "was primarily the result of false statements that were coerced from suspects by various law enforcement officers with the Buncombe County Sheriff's Office[.]" *[Id.* at 2]. According to the Plaintiff, the Sheriff and his deputies' used these coerced "lies," employed suggestive identification procedures which produced a fabricated identification, and concealed and destroyed exculpatory evidence, the cumulative· effect of which led to his wrongful conviction and imprisonment. *[Id.].* Plaintiff asserts these improper and unconstitutional police practices were performed by former Buncombe County Sheriff's deputies and were performed, encouraged, and condoned by the former Buncombe County Sheriff himself, Bobby Medford, who is currently serving a 15–year federal sentence for·extortion and corruption relating to his conduct as the Sheriff between 1994 and 2006. *[Id.].·*

Named as defendants in this action are Buncombe County, Sheriff Bobby Medford (in his individual and official capacities), and Deputy Sheriffs Sam Constance, George Sprinkle, Michael Murphy, and John Elkins (each in their individual capacities).[1] *[Id.* at 1]. Plaintiff asserts five claims against the various defendants.

In Count I, Plaintiff alleges Medford, Constance, Sprinkle, and Murphy deprived him of his constitutional rights, in contravention to 42 U.S.C. § 1983, by deliberate-ly fabricating evidence used to convict and imprison him, and by destroying and concealing exculpatory evidence. *[Id.* at 47–52]. In Count II, Plaintiff alleges Medford, Constance, Sprinkle, and Murphy deprived him of his constitutional rights, in contravention to 42 U.S.C. § 1983, by unlawfully seizing him and maliciously prosecuting him under color of state law. *[Id.* at 52–54]. In Count III, Plaintiff alleges Sprinkle, Murphy, Elkins, Unknown John Does, and Unknown Richard Roes violated his constitutional rights, in contravention to 42 U.S.C. § 1983, by depriving him of his liberty post-conviction. Plaintiff asserts these defendants deprived him of his liberty following conviction by denying him his right to due process and his right of access to the courts through the concealment of exculpatory evidence from the North Carolina district attorney. The alleged evidence withheld, according to Plaintiff, would have established the Plaintiff's innocence and identified the true perpetrators of the murder. *[Id.* at 54–61]. In Count IV, Plaintiff alleges Sprinkle, Elkins, Unknown John Does, and Unknown Richard Roes violated his constitutional rights, in contravention to 42 U.S.C. § 1983, by depriving him of his liberty post-conviction. Plaintiff asserts these defendants deprived him of his liberty following conviction by denying him his substantive due process rights by "conduct that was arbitrary and shocks the conscience, [and] contravened fundamental principles and canons of decency and fairness[.]" *[Id.* at 62–63]. Finally, in Count V, Plaintiff alleges Buncombe County, by and through its final policymaker Sheriff Bobby Medford, maintained a policy, custom, or pattern and practice of promoting, facil-

---

1. Plaintiff also has named Unknown John Doe Investigators (in their individual capacities) and Unknown Richard Roe Supervisors and Policymakers (in their individual and official capacities). While Plaintiff has not perfected service of process on these persons, the Court, by Ordered entered July 29, 2014, has permitted the Plaintiff through November 26, 2014, *to serve such persons.* [Doc. 37].

itating and condoning improper, illegal and unconstitutional investigative techniques by Buncombe County Sheriff's Office investigators, and of failing to adequately train, supervise or discipline these investigators in connection with fundamental investigative tasks implicating the constitutional rights of suspects. [Id. at 63–66]. These actions and omissions, according to the Plaintiff, were in contravention to 42 U.S.C. § 1983 and *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). It is Plaintiff's *Monell* claim asserted in Count V that is the subject of the County's dismissal motion discussed here. [Doc. 16].

Following the service of Plaintiff's Complaint, each of the natural persons named as a defendant filed an Answer. [Docs. 15; 17; 19; 22; 23; 24]. Defendant Buncombe County, on the other hand, filed a Motion to Dismiss pursuant to Fed. R.Civ.P. 12(b)(6) asserting Plaintiff failed to state a claim against it because **Buncombe County** is not the final policymaker for the elected Sheriff and cannot be held liable for the policies, practices or customs of the elected Sheriff under *Monell*. [Doc. 16 at 1–2 (emphasis added)]. Pursuant to 28 U.S.C. § 636(b), the Honorable David S. Cayer, United States Magistrate Judge, was designated to consider the County's dismissal motion and to submit to this Court a recommendation for the disposition of this motion. His Memorandum and Recommendation, filed on January 6, 2014 [Doc. 29], recommended granting the County's dismissal motion, to which the Plaintiff timely objected. [Doc. 30]. This matter is now ripe for the Court's review.

### STANDARD OF REVIEW

■ The Federal Magistrate Act requires a district court to "make a *de novo* determination of those portions of the report or specific proposed findings or rec-

ommendations to which objection is made." 28 U.S.C. § 636(b)(1). In order "to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007). The Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge to which no objections have been raised. *Thomas v. Arn*, 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). Since the Plaintiff has raised various specific objections to the Magistrate Judge's Memorandum and Recommendation, the Court will review the Magistrate Judge's recommendations *de novo.* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b)(3).

To survive a motion to dismiss made pursuant to Rule 12(b)(6), a party's allegations, treated as true, are required to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). On the one hand, the claim need not contain overly "detailed factual allegations[.]" *Id.* at 555, 127 S.Ct. 1955. On the other hand, however, "a formulaic recitation of the elements of a cause of action will not do[,]" nor will mere labels and legal conclusions suffice. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The mere possibility that the defendants acted unlawfully is not sufficient for a claim to survive a motion to dismiss. *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. The touchstone,

therefore, is plausibility and not possibility.

## DISCUSSION

■ The County's dismissal motion turns upon a legal determination inherent in the *Monell* decision: whether Sheriff Bobby Medford, during the time relevant to Plaintiff's allegations, was the final law enforcement policymaker *for Buncombe County*, North Carolina. "If the sheriff's actions constitute county 'policy,' then the county is liable for them." *McMillian v. Monroe County*, 520 U.S. 781, 783, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997), *citing Monell.*

In his fifth claim for relief, the Plaintiff asserts the County is liable to him pursuant to 42 U.S.C. § 1983 and *Monell.* Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, ...

*Id.*

The operative language of the statute bringing the County within its ambit, if at all, are the words "every person." More precisely, and if posed as question, the issue becomes is a county a "person" in the statutory sense of the word? As first construed by the Supreme Court in 1961, § 1983's reach, as far as "persons" were concerned, did not extend to include local government entities. In *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the Court addressed the phrase "every person." In doing so, the Court

relied upon an inference it drew from the legislative history of § 1983. *Id.* at 171–187. Section 1983 came into being as § 1 of the Ku Klux Act of April 20, 1871, 17 Stat. 13. When Congress was debating the measure, Senator Sherman from Ohio proposed an amendment which would have made the inhabitants of the county, city, or parish in which certain acts of violence occurred liable to compensate fully the person damaged (or his estate). *Monroe*, 365 U.S. at 188, 81 S.Ct. 473. The Senate adopted this amendment but the House rejected it. *Id.* The House's objection to the amendment came from its judgment that "Congress had no constitutional power to impose any **obligation** upon county and town organizations, the mere instrumentalities for the administration of state law." *Id.* at 190, 81 S.Ct. 473 (emphasis added). The Court therefore concluded, based upon the House's rejection of the Sherman amendment, that the class of "persons" Congress intended to subject to liability under § 1983 necessarily excluded local government entities. *Id.* at 190, 81 S.Ct. 473.

Seventeen years after *Monroe*, the Court was presented in *Monell* with the opportunity to revisit its conclusion that the word "person," as used in § 1983, excluded local government entities. In *Monell*, the plaintiffs were a class of female employees working for the New York City Department of Social Services and Board of Education. *Monell*, 436 U.S. at 660–61, 98 S.Ct. 2018. The Board and the Department had as a matter of official policy required pregnant employees to take unpaid leaves of absence before such leaves were required for medical reasons. *Id.* at 661, 98 S.Ct. 2018. The plaintiffs brought suit under § 1983 alleging the Board's and the Department's leave requirements were unconstitutional. *Id.* Plaintiffs named as defendants in the action the Department

and its Commissioner, the Board and its Chancellor, and the city of New York and its Mayor. *Id.* At summary judgment, the district court concluded the leave requirements were unconstitutional but denied plaintiffs' damages because to award plaintiffs any money would run afoul of *Monroe* wherein such entities were found not to be persons within the meaning of § 1983. *Id.* at 662, 98 S.Ct. 2018. The Second Circuit affirmed holding that the defendant entities were not persons. As for the natural defendants, the appellate court ruled they were "persons" under § 1983. *Id.* However, because any monetary award rendered against the natural defendants would have to be paid by the city, and *Monroe* precluded this outcome, a damages action against the natural defendants sued in their official capacities could not proceed. 436 U.S. at 662, 98 S.Ct. 2018. Thereafter, the Court granted plaintiffs/petitioners its Writ of Certiorari to consider:

> Whether local governmental officials and/or local independent school boards are 'persons' within the meaning of 42 U.S.C. § 1983 when equitable relief in the nature of back pay is sought against them in their official capacities?

*Id.*

The Court began by noting that *Monroe's* construction of section 1 of the Ku Klux Act (i.e. § 1983) was founded solely upon the negative inference it drew from the House's rejection of the Sherman amendment. 436 U.S. at 664, 98 S.Ct. 2018. It then looked, in turn, to Congress' legal conclusion that Congress had no constitutional power to impose any *obligation* upon county and town organizations, and recognized that the *Monroe* Court erred in equating "obligation" with "civil liability." *Id.* at 665, 98 S.Ct. 2018. Again looking to the legislative history of the Ku Klux Act, the Court recognized that Congress, when speaking about its constitutional power to

impose an "obligation" upon a local government entity under the Act, was actually concerned with forcing small towns, villages, and other municipalities that had no local law enforcement officers in place to affirmatively hire some to protect the population. Congress was reticent to pass any legislation "imposing an obligation to keep the peace [as contrasted with] merely imposing civil liability for damages on a municipality that was obligated by state law to keep the peace, but which had not in violation of the Fourteenth Amendment." *Id.* at 679, 98 S.Ct. 2018. The legislative history likewise informed the *Monell* Court that Congress indeed intended local government entities to be included within the definition of "persons" subject to liability.

> [T]he overruling of *Monroe* insofar as it holds that local governments are not "persons" who may be defendants in § 1983 suits is clearly proper. It is simply beyond doubt that, under the 1871 Congress' view of the law, were § 1983 liability unconstitutional as to local governments, it would have been equally unconstitutional as to state officers. Yet everyone—proponents and opponents alike—knew § 1983 would be applied to state officers and nonetheless stated that § 1983 was constitutional. And, moreover, there can be no doubt that § 1 of the [Ku Klux] Act was intended to provide a remedy, to be broadly construed, against all forms of official violation of federally protected rights. Therefore, absent a clear statement in the legislative history supporting the conclusion that § 1 was not to apply to the official acts of a municipal corporation—which simply is not present—there is no justification for excluding municipalities from the "persons" covered by § 1.

*Id.* at 700–01, 98 S.Ct. 2018 (internal citations omitted).

In overruling *Monroe's* holding that local government entities were not "persons" for purposes of § 1983, the Court was quick to point out that local government entities were not amenable to vicarious liability suits under the doctrine of *respondeat superior*. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." 436 U.S. at 694, 98 S.Ct. 2018. Having decided that local government entities are § 1983 "persons," and having decided that § 1983 does not permit vicarious liability suits against local government entities, the Court in *Monell* had "no occasion to address, and [did] not address, what the full contours of municipal liability under § 1983 may be." *Id.* at 695, 98 S.Ct. 2018.

While "the full contours of municipal liability under § 1983" continue to evolve, the Court has spoken to the issue presented in this matter with its decision in *McMillian.* The facts of *McMillian,* remarkably similar to the facts Plaintiff herein alleged, are recounted by the Supreme Court as follows:

> In November 1986, Ronda Morrison was murdered in Monroe County, a sparsely populated county located in southwest Alabama. Petitioner and one Ralph Myers were indicted for this crime. Myers then pleaded guilty to a lesser offense and testified against petitioner at his trial. A jury convicted petitioner of capital murder, and the trial court sentenced him to death. After two remands, the Alabama Court of Criminal Appeals reversed petitioner's conviction, holding that the State had violated *Brady v. Maryland,* 373 U.S.

83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by suppressing statements from Myers that contradicted his trial testimony and other exculpatory evidence. Thus, after spending six years in prison, petitioner was released.

> He then brought this § 1983 lawsuit in the District Court for the Middle District of Alabama against respondent Monroe County and numerous officials, including the three men in charge of investigating the Morrison murder— Tom Tate, the Sheriff of Monroe County; Larry Ikner, an investigator with the District Attorney's office in Monroe County; and Simon Benson, an investigator with the Alabama Bureau of Investigation. Only two of the officials were sued in their official capacities – Sheriff Tate and investigator Ikner— and it is only these official-capacity suits that concern us here. Petitioner principally alleged that Tate and Ikner, in their capacities as officials of Monroe County, not as officers of the State of Alabama, intimidated Myers into making false statements and suppressed exculpatory evidence.

*McMillian,* 520 U.S. at 783–84, 117 S.Ct. 1734 (internal citations omitted). The district court dismissed McMillian's claims against Monroe County and the court of appeals affirmed. Both courts opined that Sheriff Tate was not the "final policymaker" for Monroe County in the area of law enforcement since Monroe County has no law enforcement authority under Alabama law. The Supreme Court affirmed.

The Court began by noting that its decision in *McMillian* would be guided by two principles. *Id.* at 785, 117 S.Ct. 1734. First, the Court had to determine whether the government officials named as defendants were the "final policymakers for the local government in a particular area, or

on a particular issue." *Id.* Second, the Court had to be mindful that its "final policymaker" inquiry was dependent upon an analysis of state law. *Id.* With these two principles in mind, the Court began with the text of the Alabama Constitution.

According to the Alabama Constitution, Alabama sheriffs are executive department personnel. *Id.* at 789, 117 S.Ct. 1734. Further, and more importantly, the Alabama Supreme Court has interpreted Alabama law to conclude that sheriffs in Alabama are considered executive officers of the state. *Id.* As such, that court "has held unequivocally that sheriffs are state officers, and that tort claims brought against sheriffs based on their official acts therefore constitute suits against the State, not suits against the sheriff's county. *Parker [v. Amerson],* 519 So.2d [442,] 444 [ (Ala.1987) ]." *Id.*

In the present matter, the Plaintiff has alleged that the "Sheriff of Buncombe County is the final policymaker **for Buncombe County** for all purposes relevant to this Complaint." [Doc. 1 at 5, ¶ 14 (emphasis added) ]. Further, Plaintiff alleges defendant "Bobby Medford was, at all times relevant to this Complaint, the Sheriff of Buncombe County, and as such was the final policymaker with regard to all investigative activities within his jurisdiction." [2] [*Id.* ¶ 15].

Defendant Buncombe County, on the other hand, fundamentally misunderstands *Monell* liability, asserting that the question in this case is "whether the County or Defendant Sheriff Bobby Medford in his official capacity [ ] is the final policymaker[.]" [Doc. 28 at 2]. The County's confusion appears to stem from its conflating "the County" with "the County Commissioners or the County Manager." [Doc. 28

at 5]. "[T]he Sheriff is not an employee of the County subject to the direction of the County Commissioners or the County Manager.... The Sheriff and his or her personnel are not subject to the direction of the County Commissioners or the County Manager. Furthermore, the County Commissioners have no say as to how the Sheriff and his or her deputies enforce the state criminal statutes within the [sic] Buncombe County." [*Id.* at 5–6]. All of these statements may be true, but they do not answer the salient questions of who *is* the final policymaker, who adopted the policies in question, and for what entity does this person make such policy decisions? It is for this reason that the County's citation to *Little v. Smith,* 114 F.Supp.2d 437 (W.D.N.C.2000), and its reliance on *Clark v. Burke County,* 117 N.C.App. 85, 450 S.E.2d 747 (1994), are inapposite. *Little* was an excessive force case asserted against a deputy sheriff, not a direct liability action against Anson County. 114 F.Supp.2d at 445 ("The Plaintiff alleges liability on behalf of Sheriff Sellers and Anson County indirectly[.]"). The plaintiff in *Clark* alleged Burke County was liable under a *respondeat superior* theory for the actions of the sheriff and his deputy. 117 N.C.App. at 89, 450 S.E.2d at 748 ; ("Plaintiff next contends that Burke county is liable, as their employer, for Deputy Smith and Sheriff Johnson's actions."). Plaintiff herein specifically asserts that Buncombe County is directly liable to him under *Monell* and not that the County is indirectly liable to him on an "excessive force" theory, under the doctrine of *respondeat superior,* or on some other basis.

▮. It is a nonsensical tautology, for purposes of *Monell* liability, to say that a

---

**2.** Defendant Bobby Medford, in his official capacity, admitted these allegations of Plaintiff's Complaint. [Doc. 23 at 3, ¶¶ 14–15].

county is the final policymaker regarding law enforcement activities of the county. A county, strictly speaking, is a body politic; it is an entity, a subdivision of a state that includes the population of a defined geographical area. The "final policymaker" for a county, under *Monell*, must be a person (or persons) whose edicts or acts may fairly be said to represent official policy of the county, the governmental entity that is responsible for the injurious acts alleged under § 1983. *Monell*, 436 U.S. at 694, 98 S.Ct. 2018. The County's observation that "the County Commissioners have no say as to how the Sheriff and his or her deputies enforce the state criminal statutes within the [sic] Buncombe County" begs the question. The issue is whether the sheriff is the final policymaker for the County, for the State, or for some other entity.

■ To answer this question, the Court turns to North Carolina law, as required by *McMillian*, to determine on behalf of whom the sheriff acts, and whether that entity is a state or local entity. *McMillian* began by examining the Alabama Constitution and its treatment of sheriffs in that State. The Alabama Constitution unequivocally makes sheriffs there state actors. *McMillian*, 520 U.S. at 787, 117 S.Ct. 1734. The North Carolina Constitution, unlike Alabama's, places sheriffs clearly within the realm of local government.

Article VII of the North Carolina Constitution entitled "Local Government" provides that "[t]he General Assembly shall provide for the organization and government and the fixing of boundaries of counties, cities, and towns." N.C. Const. art. VII, § 1. Article VII further provides: "[i]n each county a Sheriff shall be elected by the qualified voters thereof at the same time and places as members of the General Assembly are

elected and shall hold his office for a period of four years, subject to removal for cause as provided by law." N.C. Const. art. VII, § 2. In providing for the organization of local governments, our Constitution does not make sheriffs state rather than local officers.... Defendants have cited no North Carolina case in which sheriffs were not considered local officers.

*Hull v. Oldham*, 104 N.C.App. 29, 41, 407 S.E.2d 611, 618, *disc. review denied*, 330 N.C. 441, 412 S.E.2d 72 (1991). Next, the *McMillian* court looked to how a state handled the impeachment of a sheriff. In Alabama, the State's constitution removed the authority to prosecute sheriffs from the county and placed it in the State's supreme court, as with all other state officers. In North Carolina, by contrast, impeachment must be begun in the sheriff's resident county and may be commenced by the county attorney, N.C. Gen.Stat. § 128–17, by filing a petition in the county clerk's office wherein the sheriff was elected, N.C. Gen.Stat. § 128–18, with any determination of removal being made by the superior court judge residing or holding court in the county of the accused sheriff. N.C. Gen.Stat. § 12816. The last constitutional issue reviewed in *McMillian* was whether a tort claim brought against a sheriff was a "suit against the state." In Alabama, a tort action against a sheriff is an action against the state. *McMillian*, 520 U.S. at 789, 117 S.Ct. 1734. In North Carolina, "sheriffs are part of local government and are not 'the State' for purposes of the State Tort Claims Act." *Boyd v. Robeson County*, 169 N.C.App. 460, 468, 621 S.E.2d 1, 6 (2005).

Following the constitutional inquiry under state law, *McMillian* looked to state legislative pronouncements for further indicia that might inform the state vs. local determination for county sheriffs. In Ala-

bama, the presiding circuit judge exercises general supervision over the county sheriffs in his circuit just as if those sheriffs were normal "court [i.e. state] employees[.]" *McMillian*, 520 U.S. at 790, 117 S.Ct. 1734. North Carolina has no such judicial oversight statute. More critically for the *McMillian* court, however, was that under Alabama law, the powers and duties of Alabama counties do not include any provision in the area of law enforcement. Law enforcement is strictly a state matter. *Id.* Applying the Supreme Court's analysis in *McMillian*, it is clear that a North Carolina sheriff is not a state actor but rather a local actor.

This, however, does not end the inquiry. It must yet be determined whether the sheriff is the final policymaker regarding law enforcement *for the county* or for some other entity. Particularly, Article VII, § 2, of the North Carolina Constitution raises the question of whether a county sheriff, acting in his official capacity, is a local government entity separate and apart from the county. The Supreme Court of North Carolina has answered this question.

> One of the primary duties **of the county**, acting through its public officers, is to secure the public safety by enforcing the law, maintaining order, preventing crime, apprehending criminals, and protecting its citizens in their person and property. This is an indispensable **function of county government** which the county officials have no right to disregard and no authority to abandon.

*Southern Ry. Co. v. Mecklenburg County*, 231 N.C. 148, 151, 56 S.E.2d 438, 440 (1949) (emphasis added). The court then emphatically held that the "sheriff is the chief law enforcement officer of the county." *Id.*

Based upon the foregoing, then, the Court concludes that the North Carolina Constitution and general statutes, together with North Carolina case law, support the conclusion that a North Carolina sheriff is not a State actor but a county's chief law enforcement officer, and is the ultimate policymaker for the county regarding matters of law enforcement. Further, in this matter, the Plaintiff has alleged sufficient facts that Sheriff Bobby Medford plausibly engaged in improper actions that could constitute county policy for which Buncombe County would sustain liability. Accordingly, Defendant Buncombe County's dismissal motion should be denied.

### ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff Robert Wilcoxson's Objections to the Magistrate Judge's Memorandum and Recommendation [Doc. 30] are **ACCEPTED.**

**IT IS FURTHER ORDERED** that the Memorandum and Recommendation [Doc. 29] of the Magistrate Judge is **REJECTED** and Defendant Buncombe County's Motion to Dismiss [Doc. 16] is **DENIED.**

**IT IS SO ORDERED.**