HENRY PARISH, JR., as Administrator of the ESTATE OF LOUIS LYLE PARISH, Plaintiff v. CLARENCE LOUIS HILL, III, NATHANIEL EUBANKS, in his individual capacity and as an officer of the City of Hillsborough Police Department, KEVIN DEAN, in his individual capacity and as an officer of the City of Hillsborough Police Department, LARRY BIGGS, in his individual capacity and as Chief of the City of Hillsborough Police Department, and the CITY OF HILLSBOROUGH, Defendants

No. COA97-189

(Filed 21 July 1998)

### 1. Police Officers— individual liability—high speed chase

Summary judgment was properly granted for two defendant-police officers in their individual capacities in a negligence action arising from a high speed chase where the record was devoid

of any evidence of malice or corruption by the officers. The officers are protected as public officials from liability for discretionary acts when such acts are done without a showing of malice or corruption.

### 2. Police Officers— high speed chase—gross negligence

Summary judgment was improvidently granted as to plaintiff's gross negligence claim against defendant police officers in their official capacities where the cases relied upon by defendant were distinguishable in that they involved a brief and relatively slow chase of a dangerous drunk driver along a predominantly rural street with light traffic, there was no issue as to whether the police "forced" the suspect to have the accident, or the pursuing policeman never engaged in what could be considered dangerous driving.

### 3. Police Officers— high speed chase—liability of chief and city—high speed chase policy

Summary judgment was properly granted for the chief of police and the city on plaintiff's claims of gross negligence arising from a high speed chase where plaintiff alleged that the chief and the city were grossly negligent in failing to develop a high speed chase policy, failing to properly train their officers, and failing to properly supervise the officers during the chase.

### 4. Police Officers— high speed chase—Section 1983 claims

Summary judgment was properly granted for defendant police chief and the city on plaintiff's Section 1983 claim arising from a high speed chase and crash because plaintiff's evidence fails to show any constitutional violation on the part of the officers involved. Moreover, it cannot be said that the chief or the city had notice of some inadequacy in the city's high speed chase policy, training program, or method of supervision because there had been no fatalities within the last ten years which could be attributed to the department's high speed pursuit policy.

Appeal by plaintiff from order entered 21 October 1996 by Judge Orlando F. Hudson, Jr. in Durham County Superior Court. Heard in the Court of Appeals 8 October 1997.

**PARISH v. HILL**

[130 N.C. App. 195 (1998)]

*Gary, Williams, Parenti, Finney & Taylor, by Lorenzo Williams, and Morgan & Reeves, by Robert B. Morgan, for plaintiff-appellant.*

*Michael B. Brough & Associates, by William C. Morgan, Jr., for defendants-appellees Eubanks, Dean, Biggs, and the City of Hillsborough.*

*Spears, Barnes, Baker, Wainio, Brown & Whaley, by Mark A. Scruggs, for defendant-appellee Hill.*

TIMMONS-GOODSON, Judge.

This action arises out of a high speed chase involving law enforcement officers of the Hillsborough Police Department, defendant Clarence Louis Hill, III, and plaintiff's intestate, Louis Lyle Parish. The facts tend to show that on 20 February 1993, at approximately 2:20 a.m., Lieutenant Nathaniel Eubanks, a police officer with the City of Hillsborough Police Department, initiated the chase of a speeding vehicle traveling north on North Carolina State Highway 86 (NC 86), approximately 1.4 miles outside of the Hillsborough city limits. Defendant Hill was driving the vehicle and Parish was a passenger.

Lieutenant Eubanks initiated the chase after the vehicle passed his marked police cruiser in a no passing zone, traveling at speeds between 75 and 80 miles per hour. The speed limit on NC 86 was 55 miles per hour. After realizing that he had passed a police officer, defendant Hill maintained and subsequently increased his speed in order to elude the officer. Consequently, Lieutenant Eubanks decided to stop the speeding vehicle and notified dispatch of his location and his intention. Lieutenant Eubanks activated his blue lights and siren, but the vehicle failed to stop. Instead, the vehicle increased its speed to approximately 90 miles per hour and turned right onto Interstate 85 (I-85), and proceeded in a northerly direction. The lieutenant followed the vehicle onto I-85, alerting the dispatcher that he was in pursuit of a vehicle that would not stop. In addition, Lieutenant Eubanks requested that the dispatcher alert the Durham Police Department about the pursuit moving towards Durham.

The pursuit continued on I-85 for approximately 5 miles, with both vehicles reaching speeds between 120 and 130 miles per hour. At times, defendant Hill turned off his headlights and moved in and out of traffic in an effort to evade capture. Lieutenant Eubanks estimates

that he passed more than 10 or 12 vehicles on I-85 and notes that several drivers pulled to the shoulder of the road after noticing his lights and sirens.

Defendant Hill exited I-85 at Exit 170, but circled around and got back on I-85, traveling in a southerly direction. Defendant Hill traveled South on I-85 for approximately ¾ of a mile, whereupon he crossed the median and once again proceeded in a northerly direction on I-85. At this point, defendant Hill, with Lieutenant Eubanks still in pursuit but some distance behind him, exited I-85 a second time and proceeded in an easterly direction on US 70 towards Durham. At the interchange of I-85 and US 70, Lieutenant Eubanks narrowly avoided a collision with a tractor trailer.

At the same time Lieutenant Eubanks was pursuing defendant Hill, Officer Kevin Dean of the Hillsborough Police Department positioned his squad car near a truck stop located at the interchange of I-85 and US 70 and began monitoring radio transmissions regarding the pursuit. After seeing the two speeding vehicles traveling on I-85 and exiting onto US 70, the officer pulled out from the shoulder of the road and joined in the pursuit of the suspect vehicle. Upon Officer Dean joining the chase, Lieutenant Eubanks, traveling at a high rate of speed, almost rear-ended Officer Dean's vehicle. The lieutenant avoided the accident, however, by applying his brakes and driving onto the median.

Because of the distraction of the near-accident, Lieutenant Eubanks and Officer Dean lost the vehicle driven by defendant Hill, but proceeded on US 70 with blue lights flashing. Defendant Hill continued to travel along US 70 at the vehicle's maximum speed as he neared its intersection with Highway 751.

At this point in the pursuit, Officer Bennie Bradley of the Durham City Police Department positioned his vehicle at the US 70/Highway 751 intersection to assist in the chase after having received radio transmissions alerting him to the pursuit. Officer Bradley waited until defendant Hill's vehicle passed him at a speed in excess of 90 miles per hour and then turned on his blue lights and siren and gave chase. At no time did Officer Bradley notice any other vehicles pursuing defendant Hill. After traveling approximately 375 feet, Officer Bradley then saw defendant Hill veer left, cross the westbound lane of the highway and crash into a residence. Immediately thereafter, Officer Bradley called for rescue, drove to the accident scene, exited his vehicle and located the driver. Defendant Hill was found lying

face-down near the wrecked vehicle, while plaintiff's intestate was found lying dead between the wrecked vehicle and the residence the car had hit.

On appeal, plaintiff argues that the trial court erred in granting defendants' motion for summary judgment for the following reasons: (1) defendants Eubanks and Dean were grossly negligent in their pursuit of the suspect vehicle in which Parish was a passenger; (2) defendants Larry Biggs and the City of Hillsborough were grossly negligent in that they failed to develop a substantive high speed chase policy to properly train the officers and to properly supervise the officers during the pursuit; and (3) defendants violated plaintiff's intestate's constitutional rights under § 1983. For the reasons detailed herein, we conclude that summary judgment was improvidently allowed as to plaintiff's gross negligence claim against defendants Eubanks and Dean. As to plaintiff's remaining claims, we discern no error in the trial court's order.

The purpose of the Rule 56 summary judgment is to provide an expeditious method of determining whether a genuine issue as to any material fact actually exists, and if not, whether the moving party is entitled to judgment as a matter of law. *Gudger v. Furniture, Inc.*, 30 N.C. App. 387, 389, 226 S.E.2d 835, 837 (1976). However, this Court has cautioned, "[s]ummary judgment is a drastic measure and should be used with caution, especially in a negligence action in which the jury ordinarily applies the reasonable person standard to the facts." *Laughter v. Southern Pump & Tank Co.*, Inc., 75 N.C. App. 185, 186, 330 S.E.2d 51, 52, *cert. denied*, 314 N.C. 666, 335 S.E.2d 495 (1985) (citation omitted).

A motion for summary judgment is properly granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C.R. Civ. P. 56. The moving party bears the burden of proving the lack of triable issue of fact. *Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). Once the moving party has met its burden, the nonmoving party must then "produce a forecast of evidence demonstrating that the [nonmoving party] will be able to make out at least a prima facie case at trial." *Id.* The evidence is to be viewed in the light most favorable to the nonmoving party. *Davis v. Town of Southern Pines*, 116 N.C. App. 663, 666, 449 S.E.2d 240, 242 (1994), *disc. review denied*, 339 N.C. 737, 454 S.E.2d 648 (1995).

## A. Gross Negligence Claims

### 1. Lieutenant Eubanks and Officer Dean

**[1]** Plaintiff purports to allege claims against Lieutenant Eubanks and Officer Dean in both their individual and official capacities. However, because the officers are protected as public officials from liability for discretionary acts when such acts are done without a showing of malice or corruption, *Young v. Woodall*, 119 N.C. App. 132, 458 S.E.2d 225 (1995), *rev'd on other grounds*, 343 N.C. 459, 471 S.E.2d 357 (1996), and the record in this case is devoid of any evidence of malice or corruption on the part of Lieutenant Eubanks and Officer Dean, we conclude that summary judgment was properly granted for these two defendants in their individual capacities. We proceed, then, with our analysis as to the propriety of the trial court's grant of summary judgment for Lieutenant Eubanks and Officer Dean in their official capacities.

**[2]** Under North Carolina statutory law, "a law enforcement officer will be held liable for damages proximately resulting from his or her gross negligence in deciding or continuing to pursue a violator of the law." *Fowler v. N.C. Dept. of Crime Control & Public Safety*, 92 N.C. App. 733, 736, 376 S.E.2d 11, 13 (1989) (citing *Bullins v. Schmidt*, 322 N.C. 580, 369 S.E.2d 601 (1988); N.C. Gen. Stat. § 20-145 (1993)); *see also Young*, 343 N.C. 459, 471 S.E.2d 357 (setting standard at gross negligence irrespective of victim's contact or non-contact with law enforcement vehicle). According to our Supreme Court, gross negligence is considered "wanton conduct done with conscious or reckless disregard for the rights and safety of others." *Bullins*, 322 N.C. at 583, 369 S.E.2d at 603, *quoted in Fowler*, 92 N.C. App. at 735, 376 S.E.2d at 13. "A wanton act is one 'done of wicked purpose [sic] or when done needlessly, manifesting a reckless indifference to the rights of others.' " *Id.* at 736, 376 S.E.2d at 13 (alteration in original) (citing *Siders v. Gibbs*, 39 N.C. App. 183, 249 S.E.2d 858 (1978); quoting *Wagoner v. North Carolina Railroad Company*, 238 N.C. 162, 77 S.E.2d 701 (1953)).

Citing four North Carolina cases in which gross negligence has been examined in the specific context of fleeing vehicles, defendants in the present case contend, as they did before the trial court, that as a matter of law, it is inconceivable that their conduct could have risen to the level of gross negligence. Plaintiff, on the other hand, argues that each of the cases upon which defendants rely are distinguishable from the one before us today and that as

such, the trial court erred in granting defendants' motions for summary judgment. We agree.

The first of the cases defendants call our attention to is *Bullins v. Schmidt, supra.* In *Bullins,* our Supreme Court announced that "gross negligence" was the applicable standard of care in cases in which a pursuit results in an accident not involving direct contact between a law enforcement vehicle and an injured party. 322 N.C. 580, 369 S.E.2d 601. Accordingly, after finding error in the trial court's submission of the negligence standard to the jury, the Court held that judgment should have been entered for the defendants as their actions constituted neither negligence nor gross negligence. *Id.* Significantly, in so holding, the Court pointed out several factors weighing against the plaintiff:

> The pursued vehicle had out-of-state tags. The driver was unknown to the officers and was acting as if he was under the influence of alcohol. . . . The pursuit was in the early morning hours along a predominantly rural section of U.S. 220 where traffic was light and the road was dry. The officers continuously used their emergency lights and sirens, kept their vehicles under proper control, and did not collide with any person, vehicle, or object.

*Id.* at 584-85, 369 S.E.2d at 604.

Next, defendants cite *Fowler,* 92 N.C. App. 733, 376 S.E.2d 11, wherein this Court held that a highway patrolman had not been grossly negligent in conducting a nighttime pursuit which ended in a fatal collision between the suspect vehicle and an oncoming one. *Id.* In that case, the subject chase ensued shortly before midnight after the trooper observed a vehicle traveling easterly at approximately 80 miles per hour on a section of Highway 24 and 27 near the Montgomery and Stanley County line. The weather conditions were clear, the road had little traffic and the area over which the chase took place was sparsely populated. The trooper turned his vehicle around, after observing the speeding vehicle and activated his speed detection unit, but did not activate his siren or blue light as he was unsure whether the vehicle that he pursued was the same one that he had seen earlier. The trooper followed the eastbound vehicle for approximately 8 miles over a rural two-lane highway, at speeds approximating 115 miles per hour. The trooper activated his siren or flashing blue lights after determining that the speeding vehicle was the same vehicle that he had seen earlier at the county line. A few

minutes later, the suspect vehicle crashed into another vehicle, killing the driver of the suspect vehicle and all three occupants of the second vehicle.

In *Clark v. Burke County*, 117 N.C. App. 85, 450 S.E.2d 747 (1994), the third case defendants rely upon, we again affirmed an order of summary judgment for a defendant law enforcement officer. In rendering our decision in that case, we took note of the fact that the chase took place at 4:00 a.m. within city limits, covered only three miles of a two-lane highway, lasted just a few minutes, and took place under favorable weather conditions. *Id.* at 90, 450 S.E.2d at 749. In addition, we also found it significant that the pursuing deputy stated that he did not think the suspect vehicle would stop, that the deputy never made contact with the vehicle, and that he never tried to dangerously pull alongside the vehicle in an effort to run it off of the road or pass it. *Id.* at 90, 450 S.E.2d at 749-50.

Finally, defendants point us to our Supreme Court's most recent holding in *Young*, 343 N.C. 459, 471 S.E.2d 357 (1996). There, the Court held, as it did in *Bullins*, that the trial court erred in not granting defendant police officer's motion for summary judgment and that the officer was not grossly negligent as a matter of law. *Id.* at 463, 471 S.E.2d at 360. According to the Court, the officer's "following the [suspect vehicle] without activating the blue light or siren, his entering the intersection while the caution light was flashing, and his exceeding the speed limit were acts of discretion on his part which may have been negligent but were not grossly negligent." *Id.*

In our opinion, the above cited cases are, in several respects, distinguishable from the facts of this case. The *Bullins* case is different from this case in that it involved a brief and relatively slow chase by police of a dangerous drunk driver. In addition, the chase in that case took place along a predominatly rural street where traffic was light; yet even under those circumstances, it was an undisputed fact in *Bullins* that the police gave up the chase as soon as dangerous conditions arose. Here, however, the majority of Lieutenant Eubank's and Officer Dean's 10-11 mile pursuit of defendant Hill's car, a vehicle which gave them no sign—other than the speed in which it was going—that its driver had been drinking, occurred on I-85, one of the busiest highways running through the State. Indeed, Lieutenant Eubanks himself testified that he and defendant Hill passed some 10-12 vehicles during the course of the pursuit. Moreover, according to the testimony of both officers, at certain times during their pursuit of

PARISH v. HILL

[130 N.C. App. 195 (1998)]

defendant Hill, their vehicles reached speeds of up to 130 miles per hour. Furthermore, unlike in *Bullins*, it is unclear from the record in this case whether defendants Eubanks and Dean, in their pursuit of defendant Hill, forced him to have the accident which killed plaintiff's intestate or whether they indeed "gave up the chase."

Similarly, we find this case distinguishable from the *Fowler* case because most of the "chase" in that case occurred without the knowledge of the suspect. In *Fowler*, the suspect crashed his vehicle but a few seconds after the policeman turned on his blue lights; thus, there was no issue in that case as to whether the police "forced" the suspect to have the accident, unlike here where there is some question as to whether defendant Hill was actively fleeing the police during the entire pursuit. Moreover, in *Fowler*, the policeman's brief "chase" of the suspect took place on a single road with only one car in the vicinity of the pursuit.

As for the attendant facts and circumstances in *Clark* and *Young*, we believe that they too are different from those before us today. *Young* is distinguishable because the pursuing officer in that case crashed into the plaintiff's vehicle *before* the suspect even knew he was being chased. Therefore, like *Fowler*, the *Young* case did not involve the high speed "chase" we are confronted with in this case. With regards to *Clark*, that case is also distinguishable because it entailed a 3 mile pursuit, over an easy road with only one major curve, lasting just a few minutes and reaching speeds of only 75 miles per hour. Again, this case involved a 10-11 mile chase of defendant Hill's car, through multiple roads and intersections on both highways 70 and I-85, at speeds reaching up to 130 miles per hour. In fact, the evidence shows that at the onset of their pursuit of defendant Hill, the officers in this case had to swerve dangerously to avoid hitting a truck while crossing a busy intersection and at a later point, even had to cross a median to avoid hitting one another. In contrast, the pursuing policeman in *Clark* never engaged in what could be considered dangerous driving, as there was no threat of him hitting other vehicles as he pursued the fleeing suspect.

Considering the distinctions we have just noted, we are not convinced that the case before us is controlled by our holdings in *Bullins*, *Fowler*, *Young*, or *Clark*. Rather, we believe that the facts of this case, when taken as a whole and construed in a light most favorable to plaintiff, create a genuine issue of material fact as to whether Lieutenant Eubanks and Officer Dean were grossly negligent in their

pursuit of defendant Hill. As was declared by the United States District Court for the Western District of North Carolina in its recent reversal of a lower court's grant of summary judgment for a group of defendant police officers, although " '[p]ublic policy requires officers in North Carolina to pursue and attempt to apprehend violators of the law,' " it "also requires officers not to engage in pursuit conduct with a conscious or reckless disregard for the rights and safety of others." *D'Alessandro v. Westall*, 972 F. Supp. 965, 976 (W.D.N.C. 1997) (quoting *Bullins*, 322 N.C. at 584, 369 S.E.2d at 604). Accordingly, we hold that summary judgment was improvidently granted as to plaintiff's gross negligence claim against defendants in their official capacities as police officers.

2. Chief Larry Biggs and the City of Hillsborough

**[3]** Plaintiff also alleges claims against defendant Larry Biggs (hereinafter "Chief Biggs"), in his official capacity as Chief of the City of Hillsborough Police Department, and defendant City of Hillsborough. Specifically, plaintiff alleges that Chief Biggs and the City of Hillsborough were grossly negligent in that they (1) failed to fully develop a substantive high speed chase policy; and (2) failed to properly train their officers to engage in pursuits by not requiring them to attend the State Highway Patrol Driving School. In addition, plaintiff contends that Chief Biggs failed to properly supervise his officers during the pursuit of defendant Hill.

*Clark v. Burke County, supra,* provides the relevant guidance for our consideration of the various allegations raised by plaintiff. Again, in *Clark*, we were asked to determine the propriety of a trial court's grant of summary judgment in favor of a Burke County deputy who engaged in the pursuit of the suspect vehicle. In addition, however, we were also confronted with the question of whether the supervising officer—in that case, the Sheriff of Burke County—was himself grossly negligent by failing to adequately train and supervise the deputy. In arguing this issue on appeal, plaintiff relied heavily on the opinion of their police procedure expert who, in his testimony, expressed harsh criticisms of the police department's policy on high speed chases. In particular, plaintiff's expert stated that "although [the policy] instructed officers to conduct a weighing of the risks versus the seriousness of the crime, it failed to supply the guidance necessary to make the assessment." *Id.* at 91, 450 S.E.2d at 750. Such guidance, he opined, "should come in the form of factors like location of the pursuit and traffic, road, and car conditions, all of which pro-

vide a mental checklist a deputy should run through in conducting an assessment." *Id.* The expert also criticized the "lack of involvement by [the pursuing officer's] lieutenant, whom he believed should have told [the pursuing officer] to terminate the pursuit based on available information." *Id.* Notwithstanding these criticisms, however, this Court concluded that there was no evidence to support the allegations of gross negligence on the sheriff's part, and affirmed the trial court's order of summary judgment. *Id.* at 85, 450 S.E.2d at 747.

Guided by our holding in *Clark*, we must reject plaintiff's challenge of the police department's high speed chase policy. In *Clark*, as here, the facts in the light most favorable to plaintiff tend to show that although the City of Hillsborough's high speed chase policy gave Hillsborough police officers wide discretion regarding the initiation and continuation of a high speed pursuit, discretion was not unbridled. Indeed, there were limits to the exercise of such discretion as the police department's policy delineated a number of factors which an officer was to consider when deciding whether to pursue a suspect vehicle. Such factors include the nature and seriousness of the offense, geographic location, time of day, road conditions, weather conditions, visibility and other vehicles and/or pedestrian traffic. Significantly, in assessing these factors, the policy requires that an officer balance the pursuit's danger to the public with allowing the suspect to escape. The policy also requires that the officer maintain a safe distance between vehicles. Forcing vehicles from the road and the use of roadblocks are prohibited, and deadly force cannot be used unless otherwise authorized by law. Furthermore, according to the policy, no more than two police vehicles may be involved in a given pursuit, officers must use blue lights and sirens during all pursuits, and no officer may initiate the pursuit of another vehicle unequipped with lights and a siren. Given these requirements, as well as the factors we noted above, we find no merit in plaintiff's argument that the City of Hillsborough and Chief Biggs failed to develop a substantive policy on high speed chases.

As to plaintiff's allegation that the City of Hillsborough and Chief Biggs were grossly negligent in their training of the City of Hillsborough's officers because they failed to send them to the State Highway Patrol Driving School, we find that claim to also be without merit. According to the record, the City of Hillsborough's police officers not only received instruction on driving during Basic Law Enforcement Training, but they also received a copy of the department's high speed chase policy, were required to read and then sign

it, indicating that they understood the policy's contents. In light of this evidence, we have no cause to conclude that the City of Hillsborough or Chief Biggs were grossly negligent in their training of the City of Hillsborough's police officers.

Finally, with regards to plaintiff's allegation that Chief Biggs was grossly negligent in his supervision of the pursuit of defendant Hill, the record in this case is clear that Lieutenant Eubanks, a seasoned, veteran officer and second in command to Chief Biggs, was the supervising officer on duty at the time of the 20 February 1993 pursuit, not Chief Biggs. Moreover, according to the record, the Hillsborough Police Department policy does not specifically mandate that supervisors monitor pursuits; thus, there was no requirement that Chief Biggs supervise the actions of Lieutenant Eubanks during the pursuit. Accordingly, we conclude that the evidence in this case, even when viewed in a light most favorable to plaintiff, is insufficient to support a reasonable inference that Chief Biggs was grossly negligent in his supervision of the 20 February 1993 pursuit.

In sum, we hold that summary judgment was properly granted for Chief Biggs and the City of Hillsborough on plaintiff's claims of gross negligence.

## B.  § 1983 Claims

[4]  Plaintiff also alleges that Chief Biggs and the City of Hillsborough violated his intestate's constitutional rights under 42 U.S.C. § 1983 as a result of their policy failures and inadequate training (the complaint does not allege any § 1983 claims against Lieutenant Eubanks and Officer Dean).

In order to maintain a § 1983 action, a plaintiff must first show that he—or in this case, his intestate—suffered a constitutional deprivation at the hands of an "active" defendant—in this case, Lieutenant Eubanks and Officer Dean. *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 89 L. Ed. 2d 806, 811 (1986); *Temkin v. Frederick County Com'rs*, 945 F.2d 716, 724 (4th Cir. 1991), *cert. denied*, 502 U.S. 1095, 117 L. Ed. 2d 417 (1992). Plaintiff's evidence, as detailed above, fails to show any constitutional violation on the part of Lieutenant Eubanks and Officer Dean. Hence, it follows that summary judgment was properly granted for defendants Biggs and the City of Hillsborough on plaintiff's § 1983 claim.

Moreover, the standard applicable to claims for failure to properly train, supervise, or develop policy under § 1983 is "deliberate

indifference"—a higher standard than gross negligence. *Canton v. Harris*, 489 U.S. 378, 388-89, 103 L. Ed. 2d 412, 426-27 (1989). Liability will not be imposed under this standard absent a showing that a defendant had been put on notice that a particular policy, training technique, or method of supervision was inadequate, and yet, failed to take action.

Here, the facts in evidence show that as of 20 February 1993, there had been no fatalities within the last ten years in the City of Hillsborough which could be attributed to the police department's high speed pursuit policy. Thus, it cannot be said that Chief Biggs and the City of Hillsborough had notice of some inadequacy in the City of Hillsborough's high speed chase policy, training program, or method of supervision, yet deliberately failed to take corrective action. Accordingly, we hold that summary judgment was properly granted for defendants Biggs and the City of Hillsborough on plaintiff's § 1983 claim.

In light of the foregoing, we reverse that portion of the trial court's order granting summary judgment for defendants Eubanks and Dean in their official capacities, and affirm the court's order as it pertains to the remainder of plaintiff's claims.

Affirmed in part; reversed and remanded in part.

Judges GREENE and JOHN concur.