**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

TABATHA CRUDEN,
<u>Plaintiff-Appellant,</u>

v.

GLENN BRINKLEY, in his official
capacity and individually as Sheriff
of Currituck County and the Office
of the Sheriff of Currituck County;
BARNEY MILLER, in his official

capacity and individually; JOSEPH
DAVIDSON, in his official capacity
and individually,
<u>Defendants-Appellees,</u>

and

CURRITUCK COUNTY, NORTH
CAROLINA,
<u>Defendant.</u>

No. 98-1224

Appeal from the United States District Court
for the Eastern District of North Carolina, at Elizabeth City.
Terrence W. Boyle, Chief District Judge.
(CA-96-47-2-BO)

Submitted: February 19, 1999

Decided: March 22, 1999

Before WIDENER and WILLIAMS, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

**COUNSEL**

J. Michael McGuinness, Elizabethtown, North Carolina; C. Everett Thompson II, Elizabeth City, North Carolina, for Appellant. Robert H. Sasser, III, Mark A. Davis, WOMBLE, CARLYLE SANDRIDGE & RICE, P.L.L.C., Raleigh, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Tabatha Cruden appeals from the district court's order granting summary judgment to Sheriff Glenn Brinkley and Deputies Barney Miller and Joseph Davidson of the Currituck County Sheriff's Department in her action under 42 U.S.C.A. § 1983 (West Supp. 1998). Finding no error, we affirm.

On November 20, 1995, Deputy Don Nichols of the Currituck County Sheriff's Department received a tip from a confidential informant that two individuals known for selling drugs out of vehicles in the area would be delivering a large quantity of cocaine in Camden County that evening. Nichols contacted Chief Deputy Tony Perry of the Camden County Sheriff's Department to inform him of the situation. Perry requested that Nichols get a search warrant and bring several officers to assist in the execution of the warrant. Nichols then contacted Sheriff Brinkley to inform him that Perry had requested assistance. Nichols asked if Deputies Miller and Davidson could go with him. Sheriff Brinkley consented on the conditions that the deputies wore uniforms, drove a marked unit, and permitted the Camden County officers to initially execute the warrant. Deputies Miller and Davidson arrived with Nichols at the Camden Sheriff's Department to assist in obtaining a search warrant. The officers, however, did not have enough information at the time for a search warrant and decided

2

to conduct further investigation to locate the two individuals. The officers used Miller's unmarked Mustang on loan from a friend; Davidson was the only officer wearing a uniform.

The two individuals were eventually spotted at a known drug house getting into a car. The officers followed the individuals and then pulled them over after they ran a stop sign. The officers had also noted suspicious activity in the car, as if the occupants were hiding something. At the same time, Cruden approached the intersection and saw the three officers get out of the Mustang with guns drawn and approach the suspects' car. Not recognizing the men as law enforcement officers, Cruden backed up quickly, at one point squealing her tires, turned around in the middle of the road, and sped away. Believing Cruden's vehicle may have been linked with the car they pulled over, Nichols ordered Miller and Davidson to pursue it.

Miller and Davidson caught up to Cruden's car and flashed their headlights to get her attention. Cruden claimed that Miller and Davidson were driving in a threatening and hostile manner. At one point during the pursuit, Miller and Davidson came up beside Cruden, and Cruden braked, forcing the officers to get in front of her. The officers then attempted to stop Cruden by slowing down in front of her. Cruden did not stop but went around the officers and was in front of them again. Cruden then drove to a well-lit convenience store, where she finally stopped. The officers pulled up behind her, and Miller and Davidson approached her vehicle with their weapons drawn. Miller then ordered Cruden out of the car, at which time Cruden saw Davidson's uniform and asked if they were police officers. Miller pointed to his badge, and Cruden then exited the car. Miller told Cruden to put her hands on the car, and Cruden identified herself as the wife of an assistant district attorney and produced identification from her purse. Miller apologized to Cruden, and she left the scene. The pursuit lasted only a few minutes and covered only two miles.

Cruden filed this action, asserting nine claims against the County and the Defendants in both their individual and official capacities. The court dismissed the County, and the Defendants filed a motion for summary judgment, which the court granted. We review a district court's grant of summary judgment de novo. See Henson v. Liggett Group, Inc., 61 F.3d 270, 274 (4th Cir. 1995). Summary judgment is

3

appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c).

Cruden first asserts that the court erred in granting summary judgment on her gross negligence claim under state law. Cruden claims that the officers are liable under North Carolina common law tort principles of gross negligence because high speed police chases have been described as "possibly the most dangerous of all ordinary police activities" and because the Defendants were not using an equipped police vehicle.

In North Carolina, a law enforcement officer is not generally liable for damages resulting from a vehicle pursuit unless that officer was grossly negligent. See Young v. Woodall, 471 S.E.2d 357, 359-62 (N.C. 1996). "Gross negligence is wanton conduct done with conscious or reckless disregard for the rights and safety of others." Bullins v. Schmidt, 369 S.E.2d 601, 603 (N.C. 1988). In Young, the police officer pursued a suspect without using lights or sirens and then collided with the fleeing vehicle. The North Carolina Supreme Court held that the officer had not been grossly negligent even though the officer violated an internal departmental policy and a state statute requiring activation of a blue light and a siren.

Cruden fails to establish that the officers' pursuit of her amounted to gross negligence. The chase went no more than two miles, there is no evidence that either car grossly exceeded the speed limit, and the officers did not cause any physical injury or crash into Cruden's vehicle during the chase. Further, there was no evidence that other cars were involved or had to be avoided or that the chase took place on a busy highway. Cf. Parish v. Hill, 502 S.E.2d 637, 642 (N.C. App. 1998). Also, the officers were not grossly negligent in drawing their weapons once Cruden stopped at the convenience store. Their conduct served to secure the scene and did not involve the reckless disregard of others' safety. See State v. Dark, 207 S.E.2d 290, 293 (N.C. App. 1974).

Cruden next asserts that the court erred in granting summary judgment on her common law and statutory assault claims. Cruden claims

4

that the officers assaulted her when they "drove the automobile to the point of imminent impact" with her car and pointed their guns at her. Under North Carolina law, a law enforcement officer has the right to use such force as is reasonably necessary to overcome any resistance and properly discharge his duties. See State v. Anderson, 253 S.E.2d 48, 50 (N.C. App. 1979). The evidence established that the officers acted reasonably in that the degree of force used, including the brief display of firearms, was commensurate with their justified belief that Cruden may have been a fleeing drug suspect.

Cruden next asserts that the court erred in granting summary judgment based upon qualified immunity on her Fourth Amendment and substantive due process claims. Qualified immunity shields government officials from liability for civil damages insofar as their conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Once the defendant raises a qualified immunity defense, the plaintiff carries the burden of showing that the defendant's alleged conduct violated the law and that such law was clearly established when the alleged violation occurred." Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir. 1993).

The Fourth Amendment protects against unreasonable searches and seizures, and a seizure occurs under the Fourth Amendment when physical force is applied or when a person submits to an official show of authority. See California v. Hodari D., 499 U.S. 621, 626 (1991). A police vehicle pursuit in and of itself does not constitute a seizure under the Fourth Amendment. See County of Sacramento v. Lewis, 118 S. Ct. 1708, 1715 (1998). Rather, the pursuit by Miller and Davidson was a show of authority to which Cruden did not submit. Thus, Miller and Davidson did not seize Cruden until they approached her car with weapons drawn at the convenience store. The record discloses that Miller and Davidson had a reasonable and articulable suspicion to stop Cruden. The officers had information from a reliable confidential informant that a drug deal would be happening that evening, and in their experience, drug dealers often used two vehicles. When Cruden sped away, her conduct reasonably raised suspicion among the police officers.

Further, Cruden fails to establish a violation of her substantive due process rights. In order to state a claim for a substantive due process

5

violation under § 1983 a plaintiff must show that the defendant's conduct "shocks the conscience." Temkin v. Frederick County Com'rs, 945 F.2d 716, 723 (4th Cir. 1991). In other words, that the officers' conduct amounted to "a brutal and inhumane abuse of official power [that is] literally shocking to the conscience." Id. at 720 (internal quotation marks omitted). We find that the actions of the officers in pursuing Cruden do not "shock the conscience." Cruden's assertion that the constitutional tort of governmental "danger creation" is a clearly established constitutional right that removes her claim from the strictures of the "shocks the conscience" test is without merit. Temkin made clear that "danger creation" is not the standard under which we analyze police pursuit cases and substantive due process claims. Thus, we find that the district court properly granted summary judgement on the ground of qualified immunity.

Cruden next asserts that the court improperly granted summary judgment on her claim of supervisory liability against Sheriff Brinkley, both in his individual and official capacities, for failing to properly train and discipline his deputies. To establish supervisory liability under § 1983, a plaintiff must show that: (1) the supervisor had actual or constructive knowledge that a subordinate was engaging in conduct that posed a pervasive and unreasonable risk of constitutional injury; (2) the supervisor's failure to respond amounted to deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was a causal link between the supervisor's inaction and the constitutional injury. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).

Cruden failed to establish that the deputies' actions were widespread and continuous so as to pose a pervasive and unreasonable risk of constitutional injury to other citizens. Further, there is no evidence that Sheriff Brinkley "tacitly" authorized the deputies' conduct. In fact, following the events that are the subject of this litigation, Sheriff Brinkley counseled Davidson about the dangers of engaging in any pursuit without the use of a blue light and siren, and demoted Miller from corporal to deputy sheriff due in part to the incident involving Cruden. Thus, Cruden's claim against Sheriff Brinkley in his individual capacity fails. Also, Cruden's claim against Sheriff Brinkley in his official capacity fails because Cruden fails to establish an underlying constitutional violation by the officer charged with the misconduct.

6

See e.g. Hinkle v. City of Clarksburg, 81 F.3d 416, 420 (4th Cir. 1996).

Accordingly, we affirm the district court's order granting summary judgment to the Defendants and dismissing Cruden's complaint. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

7