IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-161

No. COA21-15

Filed 15 March 2022

Cumberland County, No. 19 CVS 3596

ESTATE OF GREGORY GRAHAM, Plaintiff,

v.

ASHTON LAMBERT, individual and official capacity, FAYETTEVILLE POLICE DEPARTMENT and CITY OF FAYETTEVILLE, Defendants.

Appeal by defendants from order entered 16 July 2020 by Judge Mary Ann Tally in Cumberland County Superior Court. Heard in the Court of Appeals 21 September 2021.

*Kevin Vidunas for plaintiff-appellee.*

*Steven A. Bader for defendants-appellants.*

GORE, Judge.

¶ 1 We review an order from the trial court that denied the motion for summary judgment filed by defendants Officer Ashton Lambert and the City of Fayetteville (collectively defendants). Therefore, the following recitation of facts presents the evidence in the light most favorable to plaintiff. *See Peter v. Vullo*, 234 N.C. App. 150, 153, 758 S.E.2d 431, 434 (2014).

¶ 2 On 24 July 2018, Officer Lambert was on-duty as a police officer with the City of Fayetteville Police Department. At approximately 11:53 p.m., Officer Lambert was

dispatched to a domestic violence incident involving a firearm. In responding to the call, Officer Lambert traveled westbound in the middle straight lane along Raeford Road in a marked police cruiser. Officer Lambert traveled at a speed of 58 miles per hour, the speed limit on Raeford Road is 45 miles per hour. Officer Lambert did not activate his emergency siren or blue lights.

¶ 3        At approximately the same time on 24 July 2018, Gregory Graham walked across Raeford Road, between the intersections of Raeford Road and Sandalwood Drive and Eucalyptus Road in Fayetteville, North Carolina. Mr. Graham crossed three eastbound lanes, stopped on the median, looked to ensure traffic was clear, and then proceeded to cross the westbound lanes of Raeford Road. Mr. Graham crossed at a portion of road that did not have a pedestrian crosswalk, but was well lit.

¶ 4        While Mr. Graham was crossing Raeford Road he was struck and killed by Officer Lambert's police cruiser. At the point of impact Officer Lambert had slowed his vehicle to 53 miles per hour. Footage from Officer Lambert's body camera shows that while he was traveling down Raeford Road, Officer Lambert looked at and touched his laptop computer. Additionally, twice, in the moments before impact, Officer Lambert's vehicle slightly deviated from the lane it was traveling in. At the time of the accident, traffic was light, but there were a few other cars on the road. Raeford Road is straight and flat with no curves and the weather was clear with no rain the night of the accident. Additionally, at the time of the accident Mr. Graham's

2

blood alcohol content was 0.31.

¶ 5 On 13 June 2019, the Estate of Mr. Graham ("plaintiff") filed a complaint against Officer Lambert, in his individual and official capacity, the City of Fayetteville, and the Fayetteville Police Department. Plaintiff alleged claims of negligence, gross negligence, and wrongful death. On 19 August 2020, defendants filed an answer to plaintiff's complaint. In their answer, defendants moved to dismiss the claims against defendant Fayetteville Police Department as an improper party, moved to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, and asserted defenses of sovereign and governmental immunity, and public official immunity. Defendants also asserted that plaintiff's claims are barred by contributory negligence and gross contributory negligence. On 11 September 2019, plaintiff responded to defendants' answer.

¶ 6 Defendants filed a motion for summary judgment on 6 March 2020. Defendants reasserted that the claims against the Fayetteville Police Department should be dismissed as an improper party. Defendants also asserted that the claims against the City of Fayetteville and Officer Lambert, in his official capacity, are barred by governmental immunity and that the claims against Officer Lambert, in his individual capacity, are barred by public official immunity. Defendants also argued they are entitled to summary judgment because there is no evidence Officer Lambert acted in a grossly negligent manner, plaintiff's claims are barred by plaintiff's own

3

contributory negligence, plaintiff's claims are barred by the doctrine of sudden emergency, and that punitive damages are not available against a municipality or officers in their official capacity.

¶ 7  Defendants' motion for summary judgment was heard in Cumberland County Superior Court on 13 July 2020. The trial court concluded that the Fayetteville Police Department is not a proper party to the action and, thus, granted summary judgment in favor of defendant Fayetteville Police Department. However, the trial court concluded there are genuine issues of material fact as to the claims against defendants Officer Lambert and the City of Fayetteville and denied their motions for summary judgment. Defendants Officer Lambert and the City of Fayetteville gave written notice of appeal on 7 August 2020.

¶ 8  On appeal, defendants argue the City of Fayetteville has not waived governmental immunity, Officer Lambert is entitled to public official immunity, plaintiff did not present evidence of gross negligence, and plaintiff's contributory negligence bars his suit. We conclude that plaintiff has failed to present evidence of gross negligence and that defendants Officer Lambert and the City of Fayetteville are entitled to summary judgment.

## I.  Standard of Review

¶ 9  "Our standard of review of an appeal from summary judgment is *de novo*; such judgment is appropriate only when the record shows that 'there is no genuine issue

4

as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007)).

## II.     Discussion

### A.     Interlocutory Appeal

¶ 10        Defendants acknowledge that this appeal is interlocutory. However, defendants assert that the order denying their motion for summary judgment affected a substantial right and is immediately appealable. Typically, the denial of a motion for summary judgment is not immediately appealable, as it is interlocutory. *See Sharpe v. Worland*, 351 N.C. 159, 161-62, 522 S.E.2d 577, 579 (1999). However, denial of a motion for summary judgment on the grounds of governmental immunity is immediately appealable. *Epps v. Duke Univ.*, 122 N.C. App. 198, 201, 468 S.E.2d 846, 849, *rev. denied*, 344 N.C. 436, 476 S.E.2d 115 (1996). Additionally, in the interest of judicial economy we will consider the entirety of defendants' appeal. *See Block v. Cnty. of Person*, 141 N.C. App. 273, 277, 540 S.E.2d 415, 419 (2000); *Houpe v. City of Statesville*, 128 N.C. App. 334, 340, 497 S.E.2d 82, 87 (1998).

### B.     Governmental Immunity

¶ 11        Defendants first argue that the City of Fayetteville has not waived its governmental immunity. "[A] municipality may waive its immunity from tort liability for governmental activities by purchasing liability insurance." *Anderson v. Town of*

5

*Andrews*, 127 N.C. App. 599, 602, 492 S.E.2d 385, 387 (1997); N.C. Gen. Stat. § 160A-485(a) (2020). To state a claim against the municipality a plaintiff must allege "waiver of immunity by the purchase of insurance." *Id.* (citing *Morrison-Tiffin v. Hampton*, 117 N.C. App. 494, 504, 451 S.E.2d 650, 657, *appeal dismissed and disc. review denied*, 339 N.C. 739, 454 S.E.2d 654 (1995)). Defendants argue that plaintiff's complaint failed to allege waiver of immunity, thus immunity was not waived.

¶ 12 The plaintiff does not need to explicitly state the word "waiver" to allege a waiver of immunity by purchase of insurance. *See id.* at 603, 492 S.E.2d at 387. Under the requirements of notice pleading the complaint need only give notice to the defendants so that they understand a waiver of immunity has been alleged. *Id.*

¶ 13 Here, the complaint does not specifically mention waiver of immunity or explicitly mention the applicable insurance policy. However, the complaint does state multiple times that the action is "brought against the Defendant City pursuant to N.C.G.S. § 160A-485" and that "Defendant City shall be held liable pursuant to . . . N.C.G.S. § 160A-485." Section 160A-485 is the statute that gives a municipality the ability to purchase liability insurance and states that if the municipality does purchase liability insurance governmental immunity is waived. N.C. Gen. Stat. § 160A-485. We hold that the complaint is sufficient to give notice to defendants that plaintiff is alleging a waiver of immunity because it states the action is brought and

that defendants are liable pursuant to § 160A-485. Therefore, governmental immunity was waived.

## C. Public Official Immunity

¶ 14     Defendants next argue that Officer Lambert has public official immunity for the claims brought against him in his individual capacity. "As long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability." *Smith v. State*, 289 N.C. 303, 331, 222 S.E.2d 412, 430 (1976) (citations omitted). Public official immunity "serves to protect officials from *individual liability* for mere negligence, but not for malicious or corrupt conduct, in the performance of their official duties." *Thompson v. Town of Dallas*, 142 N.C. App. 651, 655, 543 S.E.2d 901, 904-05 (2001) (citation omitted) (emphasis in original).

¶ 15     The capacity in which a defendant is sued dictates what immunity may be available to them. *See Est. of Long v. Fowler*, 2021-NCSC-81, ¶ 13. A suit against a defendant in their official capacity is subject to the doctrine of sovereign immunity, while a suit against a defendant in their individual capacity is not subject to the doctrine of sovereign immunity. *Id.* However, a suit against a defendant in their individual capacity may be subject to the doctrine of public official immunity if she

7

acts within the scope of her office and acts without malice or corruption. *Smith*, 289 N.C. at 331, 222 S.E.2d at 430.

¶ 16        "It is a simple matter for attorneys to clarify the capacity in which a defendant is being sued. Pleadings should indicate in the caption the capacity in which a plaintiff intends to hold a defendant liable." *Fowler*, at ¶ 14 (quoting *Mullis v. Sechrest*, 347 N.C. 548, 554, 495 S.E.2d 721, 724 (1998)). Here, the caption of the complaint lists Officer Lambert in both his individual and official capacity. The doctrine of governmental immunity is applicable to Officer Lambert in his official capacity and, we acknowledge that public official immunity applies to law enforcement officers acting within the scope of their duties. *See Thompson*, 142 N.C. App. at 655, 543 S.E.2d at 904-05.

¶ 17        In the case *sub judice*, Officer Lambert was responding to an incident within the scope of his official duties at the time of the accident and his conduct was neither malicious nor corrupt. Further, plaintiff concedes that Officer Lambert is entitled to public official immunity. Thus, we hold public official immunity applies and the trial court erred by not granting summary judgment for the claims brought against Officer Lambert in his individual capacity.

D.    Gross Negligence

¶ 18　　　Defendants next argue that plaintiff did not present evidence of gross negligence. Plaintiff argues that Officer Lambert was grossly negligent in the operation of his police cruiser.

¶ 19　　　Section 20-145 exempts police officers from speed laws when engaged in the apprehension of a law violator. N.C. Gen. Stat. § 20-145. This Court has concluded that the applicability of § 20-145 and the factors considered in its analysis are not only applicable to the pursuit of a law violator, but are also applicable when an officer is "emergency response driving" to the scene of an incident. *Truhan v. Walston*, 235 N.C. App. 406, 413, 762 S.E.2d 338, 343 (2014), *review denied by*, 368 N.C. 272, 772 S.E.2d 863 (2015). Here, Officer Lambert was responding to a domestic violence incident involving a firearm, thus § 20-145 is applicable.

¶ 20　　　However, the exemption in § 20-145 "does not apply to protect the officer from the consequence of a reckless disregard of the safety of others." *Norris v. Zambito*, 135 N.C. App. 288, 293, 520 S.E.2d 113, 117 (1999) (quotations omitted). Our Supreme Court has held that an officer's liability in a civil action for injuries resulting from the officer's vehicular pursuit of a law violator is to be determined pursuant to a gross negligence standard of care. *Parish v. Hill*, 350 N.C. 231, 238, 513 S.E.2d 547, 551, *reh'g denied*, 350 N.C. 600, 537 S.E.2d 215 (1999). "[G]ross negligence has been defined as wanton conduct done with conscious or reckless disregard for the rights and safety of others . . . an act is wanton when it is done of wicked purpose, or when

done needlessly, manifesting a reckless indifference to the rights of others." *Id.* at 239, 513 S.E.2d at 551-52 (internal quotations and citations omitted). "Whether an officer's behavior during pursuit amounted to gross negligence is an issue of law to be determined from the evidence." *Greene v. City of Greenville*, 225 N.C. App. 24, 26, 736 S.E.2d 833, 835, *review denied*, 367 N.C. 214, 747 S.E.2d 249 (2013). "Although issues of negligence are generally not appropriately decided by way of summary judgment, if there are no genuine issues of material fact, and an essential element of a negligence claim cannot be established, summary judgment is proper." *Norris*, 135 N.C. App. at 293, 250 S.E.2d at 116. "North Carolina's standard of gross negligence, with regard to police pursuits, is very high and rarely met." *Eckard v. Smith*, 166 N.C. App. 312, 323, 603 S.E.2d 134, 142 (2004), *aff'd*, 360 N.C. 51, 619 S.E.2d 503 (2005).

¶ 21    "When determining whether an officer's actions constitute gross negligence, we consider: (1) the reason for the pursuit, (2) the probability of injury to the public due to the officer's decision to begin and maintain pursuit, and (3) the officer's conduct during the pursuit." *Greene*, 225 N.C. App. at 27, 736 S.E.2d at 836 (citation omitted).

¶ 22    "Relevant considerations under the first prong include whether the officer was attempting to apprehend someone suspected of violating the law and whether the suspect could be apprehended by means other than high speed chase." *Id.* (cleaned up). Here, Officer Lambert was responding to a domestic violence incident involving

a firearm. Thus, Officer Lambert's reason for driving at a speed above the speed limit was valid and lawful.

¶ 23    "When assessing prong two, we look to the (1) time and location of the pursuit, (2) the population of the area, (3) the terrain for the chase, (4) traffic conditions, (5) the speed limit, (6) weather conditions, and (7) the length and duration of the pursuit." *Id.* (citation omitted). Here, the accident occurred just before midnight on a seven-lane road surrounded by commercial buildings. Officer Lambert was driving on a flat, straightaway portion of Raeford Road on a night where the weather was clear. Officer Lambert's vehicle slightly deviated from its lane of traffic twice, but there is no evidence that he lost control of the vehicle. Video footage shows there were at least five other vehicles on the road at the time of the accident. The speed limit on Raeford Road is 45 miles per hour, and Officer Lambert was traveling at a speed of 58 miles per hour. Finally, the record shows that less than two minutes passed from the time Officer Lambert was dispatched to the time of the accident. Therefore, we conclude that these facts are insufficient to establish gross negligence under prong two.

¶ 24    The third prong analyzes the officer's conduct. *Id.* "Relevant factors include (1) whether an officer made use of the lights or siren, (2) whether the pursuit resulted in a collision, (3) whether an officer maintained control of the cruiser, (4) whether an officer followed department policies for pursuits, and (5) the speed of the pursuit." *Id.* at 27-28, 736 S.E.2d at 836 (citation omitted). Courts have discussed facts where an

officer failed to use emergency lights, sirens, and headlights, *Young v. Woodall*, 343 N.C. 459, 463, 471 S.E.2d 357, 360 (1996); *Fowler v. N.C. Dep't of Crime Control & Pub. Safety*, 92 N.C. App. 733, 736, 376 S.E.2d 11, 13, *disc. rev. denied*, 324 N.C. 577, 381 S.E.2d 773 (1989), violated generally accepted standards regarding high speed driving and police chases*, Clark v. Burke Cnty*, 117 N.C. App. 85, 91, 450 S.E.2d 747, 750 (1994), and whether the officer was speeding during the pursuit, *Fowler*, 92 N.C. App. at 736, 376 S.E.2d at 13. In these cases, our Courts have concluded that the officers' conduct at most amounted to negligent discretionary acts but did not rise to the level of gross negligence.

¶ 25     In the present case, Officer Lambert did not utilize his lights or sirens, his pursuit resulted in the accident involving Mr. Graham, and Officer Lambert was traveling 13 miles per hour above the speed limit. Plaintiff presents arguments on appeal that Fayetteville Police Department policy required Officer Lambert to utilize his lights and sirens when responding to a scene. Plaintiff also argues that Officer Lambert lost control of his vehicle, however the evidence shows his vehicle only slightly deviated from its lane of travel. Additionally, Officer Lambert did look at his laptop and touch the laptop's trackpad while he was driving on Raeford Road. These facts track closely to those in the above cited cases and demonstrates that Officer Lambert's conduct did not rise to the level of gross negligence. *See Young*, 343 N.C. at 463, 471 S.E.2d at 360; *Fowler*, 92 N.C. App. at 736, 376 S.E.2d at 13; *Clark*, 117

N.C. App. at 91, 450 S.E.2d at 750. We conclude that Officer Lambert's actions were acts of discretion on his part which may have been negligent but were not grossly negligent.

¶ 26    Contrasting the facts in the case *sub judice* to those in *Truhan* further demonstrates that Officer Lambert's conduct did not rise to the level of gross negligence. In *Truhan*, the officer was responding to the scene of a minor car accident involving no injuries, to act as traffic control. *Truhan*, 235 N.C. App. at 413, 762 S.E.2d at 343. The officer began his high-speed response at approximately 7:19 a.m., and drove along a road where a school, a fire station, and multiple residential driveways and side streets are located. *Id.* at 414-15, 762 S.E.2d at 344. The area was not densely populated, but there was a mix of residential, commercial, and governmental buildings along the highway. *Id.* at 415, 762 S.E.2d at 344. The officer was driving along a mostly flat road with some turns and curves. *Id.* There was no evidence of heavy traffic, but there were several automobiles in the area. *Id.* The officer in *Truhan* was traveling at speeds in excess of 100 miles per hour in a 45 miles per hour zone. *Id.* In *Truhan*, the officer also failed to activate his lights and sirens when they should have been utilized. *Id.* at 416, 762 S.E.2d at 344. The Court in *Truhan* concluded these facts did present a genuine issue of material fact as to gross negligence and reversed the trial court's grant of summary judgment. *Id.* at 421, 762 S.E.2d at 347.

¶ 27    We believe the facts in *Truhan* are more egregious than those in the present matter. For example, the officer in *Truhan* was traveling at speeds more than double the speed limit and in excess of 100 miles per hour while Officer Lambert's speed only exceeded the speed limit by 13 miles per hour. Further, the officer in *Truhan* was traveling on a road with turns and curves in a densely populated area at a time of day when there were numerous other vehicles on the road. In contrast, Officer Lambert was traveling on a multi-lane straightaway road, at night when traffic on that road was sparse. We do not believe the facts in the present case rise to the level of those in *Truhan* which created a genuine issue of material fact as to gross negligence.

### III.    Conclusion

¶ 28    Our holding on the gross negligence issue is dispositive, thus we decline to consider defendants' contributory negligence argument. We hold there is no genuine issue of material fact as to whether Officer Lambert was grossly negligent, thus defendants are entitled to judgment as a matter of law and we reverse the trial court's order denying summary judgment.


REVERSED.

Judge TYSON concurs.

JACKSON concurs in part and dissents in part

JACKSON, Judge, concurring in part and dissenting in part.

I join the majority opinion except for the portion holding that the trial court erred in denying Defendants' motion for summary judgment on the basis that there was no genuine issue of material fact whether Officer Lambert was grossly negligent when he struck Mr. Graham with his police cruiser. In my view, the record evidence presents a genuine question of whether Officer Lambert was grossly negligent as he used his computer while speeding down Raeford Road in the middle of the night on 24 July 2018 before striking and killing Mr. Graham. The majority in essence holds that Officer Lambert's conduct cannot constitute gross negligence as a matter of law. Because I would hold that there is a genuine issue of material fact regarding whether Officer Lambert was grossly negligent, I respectfully dissent.

## I. Governing Law

"[I]ssues of negligence are generally not appropriately decided by way of summary judgment[.]" *Norris v. Zambito*, 135 N.C. App. 288, 293, 520 S.E.2d 113, 116 (1999). Summary judgment is only proper if

> there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. In order to prevail on a summary judgment motion, the moving party must show either (1) an essential element of plaintiff's claim is nonexistent; (2) plaintiff cannot produce evidence to support an essential element of his claim, or (3) plaintiff cannot surmount an affirmative defense which would bar the claim. The trial court must construe all evidence in the light most favorable to the non-moving party, allowing the non-moving party to be given all favorable inferences as to the facts.

*Gibson v. Mutual Life Ins. Co. of New York*, 121 N.C. App. 284, 286, 465 S.E.2d 56, 58 (1996) (internal marks and citations omitted).

¶ 31 On appeal,

> [w]e review a trial court order granting or denying a summary judgment motion on a de novo basis, with our examination of the trial court's order focused on determining whether there is a genuine issue of material fact and whether either party is entitled to judgment as a matter of law. As part of that process, we view the evidence in the light most favorable to the nonmoving party.

*Beeson v. Palombo*, 220 N.C. App. 274, 277, 727 S.E.2d 343, 346-47 (2012) (internal marks and citation omitted).

¶ 32 While N.C. Gen. Stat. § 20-145 "exempts police officers from speed laws when engaged in the pursuit of a law violator[,] [t]he exemption . . . does not apply to protect the officer from 'the consequence of a reckless disregard of the safety of others.'" *Norris*, 135 N.C. App. at 293, 520 S.E.2d at 117 (quoting N.C. Gen. Stat. § 20-145). "Our Supreme Court has construed the statute as establishing a general standard of care, as opposed to a simple exemption from speed laws, and has held that an officer's liability in a civil action for injuries resulting from the officer's vehicular pursuit of a law violator is to be determined pursuant to a gross negligence standard of care." *Id.* (citing *Parish v. Hill*, 350 N.C. 231, 513 S.E.2d 547 (1999)). "'Gross negligence' occurs

when an officer consciously or recklessly disregards an unreasonably high probability of injury to the public despite the absence of significant countervailing law enforcement benefits." *Eckard v. Smith*, 166 N.C. App. 312, 319, 603 S.E.2d 134, 139 (2004). "Gross negligence is something less than willful and wanton conduct." *Smith v. Step*, 257 N.C. 422, 425, 125 S.E.2d 903, 905 (1962) (internal marks omitted).

## II.    Application

¶ 33        A person's use of a computer or handheld electronic device while operating an automobile presents unique risks to public safety. Our General Assembly recognized as much by enacting N.C. Gen. Stat. § 20-136.1, which prohibits private citizens from "driving any motor vehicle . . . while viewing any television, computer, or video player which is located in the motor vehicle at any point forward of the back of the driver's seat, and which is visible to the driver while operating the motor vehicle." N.C. Gen. Stat. § 20-136.1 (2019). Section 20-136.1 does not apply "to law enforcement or emergency personnel while in the performance of their official duties[.]" *Id.* However, it is a legislative recognition of the simple fact that driving and watching a screen at the same time is dangerous.

¶ 34        Viewing the evidence in the light most favorable to Mr. Graham's estate, as we must on review of the trial court's denial of Defendants' motion for summary judgment, *Beeson*, 220 N.C. App. at 277, 727 S.E.2d at 346-47, I would hold that the

evidence presents a genuine issue of material fact regarding whether Officer Lambert was grossly negligent when he struck and killed Mr. Graham. On his first night on patrol by himself while working for the Fayetteville Police Department or any other law enforcement agency, Officer Lambert was one of three officers dispatched to a domestic disturbance call on 24 July 2018. It was Officer Lambert's first night shift, and his first day working alone. He had joined the Fayetteville Police Department the previous October. Both of the other officers responding to the call were closer to where it originated, and Officer Lambert and the other officer responding were backup. In an interview, Officer Lambert later recalled that the status of the domestic disturbance at the time of the collision was that the disturbance was ongoing, and that because he was the farthest away of the three responding officers, he made a standard traffic response. Officer Lambert also admitted at his deposition that the situation was not an emergency. Officer Lambert never activated his blue lights or siren.

¶ 35        Upon initially responding to the call, Officer Lambert used his laptop computer in the front seat of his cruiser to locate the address to which he had been dispatched. He originally stated that he used the computer's touchscreen; however, after reviewing footage from his body-worn camera, he later admitted that he used the computer's track pad. This body-worn camera footage reflects that Officer Lambert

found the address with the computer's track pad 15 seconds before he struck and killed Mr. Graham. Officer Lambert was driving with one hand on the steering wheel and the other on his laptop for 18 of the 23 seconds before he collided with Mr. Graham, and periodically glanced at his computer screen during this timeframe. The body-worn camera footage and the dashcam footage from Officer Lambert's cruiser provides evidence of at least two lane violations by Officer Lambert in the moments leading up to the accident. In each, Officer Lambert passes right on the outside line of his lane or over it, and these lane violations appear to coincide with Officer Lambert looking at his computer. Five seconds before colliding with Mr. Graham, Officer Lambert places his second hand on the steering wheel. Three seconds before the collision, Officer Lambert leans distinctively towards his computer.

¶ 36    From Officer Lambert's body camera footage in the seconds following the accident, it appears Mr. Graham was killed instantly by the impact.

¶ 37    The collision occurred next to a car dealership, and security footage from the dealership highlights just how well-lit the area was even at such a late hour. Enormous floodlights illuminated a large parking lot at the dealership and nearby area, in addition to the lights along the road itself. The dealership security footage shows Mr. Graham crossing the road while using a cane. Mr. Graham was not stumbling as he crossed the road, and he successfully crossed five lanes of traffic

before he was hit by Officer Lambert. The dealership footage also shows that Mr. Graham stopped at the median and looked both ways before crossing the side of the road where he was hit by Officer Lambert. From the dealership footage, as well as video footage from Officer Lambert's cruiser and his body camera, Officer Lambert does not appear to brake at all before hitting Mr. Graham. There also were no skid marks on the road after the accident. From the video footage, Officer Lambert does not appear to attempt to avoid hitting Mr. Graham, although he states, in the body camera footage, after hitting Mr. Graham, that he jerked left to try to avoid hitting him—even though he struck Mr. Graham as Mr. Graham was crossing the road in front of him from Officer Lambert's left to his right. In the body-worn camera footage, after the collision, Officer Lambert can also be heard to say, "I looked over, and . . . ." But then the audio cuts out, and in a subsequent interview, Officer Lambert stated that he could not recall what his next words were after "and." Officer Lambert consistently stated that he was going 50 miles an hour at the time of the collision, but his cruiser's black box showed that he was going 58 at one point and was traveling about 53 when he struck Mr. Graham.

¶ 38        As the majority notes, Officer Lambert was speeding, his blue lights and siren were not activated (in violation of Department policy), and the location of his collision with Mr. Graham was well-lit despite the late hour. While no one fact is conclusive,

viewing the evidence before the trial court in its totality and in the light most favorable to Mr. Graham's estate, as we must, the evidence before the trial court presented a genuine issue of material fact regarding whether Officer Lambert was grossly negligent. While I cannot say that the evidence shows that Officer Lambert *was* grossly negligent, it certainly shows that a jury could conclude that he was. I conclude that this evidence, if believed by a jury, tended to show a "high probability of injury to the public despite the absence of significant countervailing law enforcement benefits[,]" and thus raises a genuine issue of material fact on the question of gross negligence. *Jones v. City of Durham*, 168 N.C. App. 433, 444, 608 S.E.2d 387, 394 (2005) (Levinson, J., concurring in part and dissenting in part), *reversed for the reasons stated in the dissent*, 361 N.C. 144, 638 S.E.2d 202 (2006). Moreover, it is difficult, if not impossible, to square the majority's holding that Officer Lambert's conduct *could not* have been grossly negligent with the video footage before the trial court when ruling on Defendants' motion for summary judgment. I believe Mr. Graham's estate is entitled to present this footage to a jury and for it to determine whether Officer Lambert was grossly negligent on 24 July 2018—a task to which we are ill-suited as an appellate court.

¶ 39        The majority distinguishes this case from our decision in *Truhan v. Walston*, 235 N.C. App. 406, 762 S.E.2d 338 (2014), in support of its holding that Officer

- 7 -

Lambert could not have been grossly negligent as a matter of law. In my view, however, *Truhan* is not relevantly distinct from this case in any respect. Like the present case, *Truhan* concerned an officer-involved collision, but in *Truhan*, the officer brought an action against a motorist he struck while responding to a call and the motorist then counter-claimed against the officer, alleging that the officer's negligence was the cause of her and the officer's injuries, not her own. *Id.* at 410, 762 S.E.2d at 342. On cross motions for summary judgment filed by the officer and his insurer and the defendant and her husband and their insurer, the trial court granted summary judgment in favor of the officer and his insurer. *Id.* at 410-11, 762 S.E.2d at 342.

¶ 40    While true that the officer in *Truhan* was driving considerably faster than Officer Lambert, unlike in *Truhan*, in this case, viewing the evidence in the light most favorable to Mr. Graham's estate, the evidence shows that (1) the accident occurred on Officer Lambert's first night shift, and first day working alone; (2) Officer Lambert did not have his blue lights activated at the time of the accident; (3) Officer Lambert was using his computer to find an address in the moments leading up to the collision; (4) Officer Lambert committed two lane violations because he was looking at his computer instead of the road ahead of him in the moments before the crash; (5) Officer Lambert leaned distinctively towards his computer three seconds before the accident;

and (6) Officer Lambert collided with Mr. Graham without attempting to avoid Mr. Graham by turning or applying the cruiser's brakes to slow his vehicle down. Because I would hold that the evidence before the trial court presented a genuine issue of material fact regarding Officer Lambert's gross negligence, as in *Truhan* and *Jones*, I respectfully dissent.